919 A.2d 716

**Rafael FLORES**

v.

**Ronald BELL, et al.**

**No. 65, Sept. Term, 2006.**

Court of Appeals of Maryland.

March 20, 2007.

Charles E. Wilson, Jr. (Amy Leete Leone of McCarthy Wilson, LLP on brief), Rockville, for petitioner.

Leslie Hayes Russo (Luke A. Rommel of Otway Russo, LLP, Salisbury; Joseph A. Miklasz and Carlton J. Moss, Jr. of Law Offices of Joseph A. Miklasz, on brief), Glen Burnie, for respondents.

Argued before BELL, C.J., RAKER, *WILNER, CATHELL, BATTAGLIA, GREENE and THEODORE G. BLOOM (Retired, specially assigned), JJ.

RAKER, J.

Respondents Ronald and Melanie Bell filed an action sounding in negligence in the Circuit Court for Anne Arundel County against petitioner Rafael Flores, alleging that Flores negligently caused injury to Mr. Ronald Bell in an automobile accident on October 4, 2000. The issue before this court concerns a stipulation entered into by the parties before the trial began, and the impact this stipulation had on questions submitted by the trial court for consideration by the jury. At the conclusion of a seven-day jury trial in the Circuit Court for Anne Arundel County, the jury returned a verdict in favor of the Bells and awarded $5,329 in damages. The Bells appealed to the Court of Special Appeals, and, in an unreported opinion, the court vacated the judgment and remanded the case to the Circuit Court for a new trial.

We granted Flores' petition for writ of certiorari to primarily address the following question: [1]

"On review of the trial court's decision to reserve ruling on a motion for judgment and submit an issue to the jury, can

---

* Wilner, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. We also granted writ of certiorari to consider the following question: "Can the Court of Special Appeals, *sua sponte,* vacate a jury's verdict as a sanction against defense counsel for making a statement to the Circuit Court that it perceived to constitute a misrepresentation?" In light of our holding, we do not reach this question. We take no position as to whether defense counsel's conduct and statements constituted a misrepresentation, and we leave this issue to be considered in another forum.

the Court of Special Appeals vacate a jury's verdict when, if it was error, it was harmless?"

*Flores v. Bell,* 394 Md. 478, 906 A.2d 942 (2006).

## I.

Ronald Bell was struck from behind while driving a van near Crofton, Maryland on October 4, 2000. Seventeen days later, on October 21, 2000, Mr. Bell was in a second automobile accident. The Bells filed a Complaint against Flores for injuries that Mr. Bell allegedly sustained in the first accident and filed a separate suit against a different party for injuries that Mr. Bell claimed occurred in the second accident.

Prior to trial, counsel for both sides orally agreed to stipulate that Flores was liable for the underlying accident. The stipulation was not reduced to writing, nor was it formally placed on the record. During opening argument, the Bells' counsel informed the jury that the parties have "stipulated that—and they admitted that it was Mr. Flores' fault." Flores' counsel, in opening argument, also acknowledged the stipulation for liability. Flores' counsel stated:

"In this case, liability has been admitted. Why? Because Mr. Flores admits that he made a mistake.... For whatever reason, whether Mr. Flores didn't pay enough attention, took his eyes off the road, thought he had more time to stop than he did, for whatever that reason is, he couldn't stop in time to avoid an impact so an impact occurred. Now, he has admitted it. He has accepted responsibility for that and he comes before you today not to try to avoid responsibility, but to say that even though he is responsible for causing this impact ... he is not responsible for this litany of medical expenses that you have just heard."

In the Bells' case-in-chief, the investigating police officer at the scene identified Flores as the driver of the vehicle that crashed into the Bells'. The officer, examined by the Bells' counsel, testified as follows:

"Q. Who did you determine was operating the vehicles?

"A. The gentleman sitting in the Defendant's seat ... He was driving the passenger vehicle. The gentleman sitting next to you was driving the white van.

* * * * * *

"Q. Officer, testifying from your report, can you tell us who was in which car?

"A. Mr. Rafael Flores was driving a Dodge Caravan, my correction, and Mr. Bell was driving a Ford van that was white in color."

At the close of respondents' case and after the jury had been excused from the courtroom, Flores' counsel informed the trial court that he intended to make a motion. Before counsel articulated the grounds for his motion, the trial court, *sua sponte,* raised the issue of whether the Bells had proven that Flores was driving the vehicle that hit the Bells' van. The following colloquy occurred:

"[THE COURT]: For the record, the Plaintiff has rested his case. I will consider a motion by the Defendant at this time. Let me ask you a question? Has anybody put the Defendant behind the wheel of the car that hit the Plaintiff from behind?

"[FLORES' COUNSEL]: No, Your Honor.

"[THE COURT]: I didn't think they did. Mr. Miklasz [the Bells' counsel], I don't think there is any evidence that puts that man behind the wheel of the trailing car.

"[FLORES' COUNSEL]: And it is on that basis, Your Honor, that we would move for judgment in favor of the Defendant, Mr. Flores.

"[THE COURT]: I have been waiting.

* * * * * *

"[BELLS' COUNSEL]: Now, the Defendant has admitted liability. They said that they have admitted liability in this case; they stipulated to liability. The question before the Court was for damages, and that is what we were here for. . . .

* * * * * *

"[THE COURT]: Let me just say—as you know—Mr. Evans [Flores' Counsel] didn't even begin his motion, and I knew exactly what the motion would be about. And I have gone home from this five-day trial everyday thinking, "I wonder when Mr. Miklasz [the Bells' counsel] is going to put this Defendant behind the wheel."

\* \* \* \* \* \*

"[THE COURT]: How about your admission of liability?

"[FLORES' COUNSEL]: We were careful. We admitted responsibility for the damages if the damages were causally proven to have related from this accident. That is a difference between saying that we admitted that he was the driver on that day in the vehicle. He could be a third party responsible party, just like an insurer, or just like any other—the parent of a minor child, saying that they will be responsible should the jury find that damages were causally related to an accident. But there is a distinction between that and saying that Mr. Flores was the operator of the vehicle in question at the time of the accident. Mr. Flores has not taken the stand, and was not called as an adverse witness in their case."

The trial judge reserved ruling on Flores' Motion for Judgment and informed counsel that he would include a question on the verdict sheet asking the jury to determine whether Flores was the driver of the vehicle that collided with the Bells' vehicle. The first question on the verdict sheet stated as follows: "Do you find that the Plaintiffs have proven by a preponderance of the evidence that the Defendant, Rafael Flores, was the operator of the second vehicle involved in the accident of October 4, 2000?" The Bells' counsel objected to including the question on the verdict sheet.

The jury answered "yes" to the first question (driver-identification), "yes" to the second question (whether Ronald Bell's injuries were proximately caused by Flores' negligence), and awarded $5,329 in damages: $2,149 for past medical expenses; $680 in lost wages; $2,500 in non-economic damages; and $0 for loss of consortium.

## II.

It has long been the policy in this State that this Court will not reverse a lower court judgment if the error is harmless. *Greenbriar v. Brooks,* 387 Md. 683, 740, 878 A.2d 528, 563 (2005); *Crane v. Dunn,* 382 Md. 83, 91, 854 A.2d 1180, 1185 (2004). The burden is on the complaining party to show prejudice as well as error.[2] *Greenbriar,* 387 Md. at 740, 878 A.2d at 563; *Crane,* 382 Md. at 91, 854 A.2d at 1185; *Beahm v. Shortall,* 279 Md. 321, 330, 368 A.2d 1005, 1011 (1977).

Precise standards for determining prejudice have not been established and depend upon the facts of each individual case. *Fry v. Carter,* 375 Md. 341, 356, 825 A.2d 1042, 1050 (2003); *see also State Deposit v. Billman,* 321 Md. 3, 17, 580 A.2d 1044, 1051 (1990) (reiterating that appellate court balances the probability of prejudice from the face of the extraneous matter with the circumstances of the particular case). Prejudice can be demonstrated by showing that the error was likely to have affected the verdict below; an error that does not affect the outcome of the case is harmless error. *Crane,* 382 Md. at 91, 854 A.2d at 1185; *Beahm,* 279 Md. at 331, 368 A.2d at 1011 (1977). We have also found reversible error when the prejudice was substantial. *Fry,* 375 Md. at 356, 825 A.2d at 1050. The focus of our inquiry is on the probability, not the possibility, of prejudice. *Crane,* 382 Md.

---

2. Courts may presume prejudice, under certain circumstances, although it is the exception rather than the rule. *See, e.g., Stokes v. State,* 379 Md. 618, 638, 843 A.2d 64, 75 (2004) (holding that presence of alternate jurors during jury deliberations created a presumption of prejudice); *Jenkins v. State,* 375 Md. 284, 289, 825 A.2d 1008, 1011 (2003) (presuming prejudice based on improper contact during the trial between a juror and a police witness for the State); *Murrell v. Baltimore,* 376 Md. 170, 197, 829 A.2d 548, 564 (2003) (violating procedure established in city code may present structural trial error whereby prejudice is presumed); *Harris v. Harris,* 310 Md. 310, 319–20, 529 A.2d 356, 360–61 (1987) (presuming prejudice where erroneously imposed disqualification deprives a litigant of the right to chosen counsel); *King v. State Roads Comm'n,* 284 Md. 368, 372, 396 A.2d 267, 270 (1979) (noting that prejudice may be presumed where deviation from prescribed court procedure impairs or denies full exercise of peremptory challenges).

at 91, 854 A.2d at 1185; *Harford Sands, Inc. v. Groft,* 320 Md. 136, 148, 577 A.2d 7, 12–13 (1990). We discussed the standard of review in civil cases in *Crane,* 382 Md. 83, 854 A.2d 1180, noting as follows:

> "Prejudice will be found if a showing is made that the error was likely to have affected the verdict below. 'It is not the possibility, but the probability, of prejudice which is the object of the appellate inquiry.' 'Courts are reluctant to set aside verdicts for errors in the admission or exclusion of evidence unless they cause substantial injustice.' Substantial prejudice must be shown. To justify the reversal, an error below must have been '. . . both manifestly wrong and substantially injurious.' "

*Id.* at 91–92, 854 A.2d at 1185 (citations omitted).

### III.

■ Petitioner argues that, even if the trial court erred by submitting the driver-identification issue to the jury, the error, if any, was harmless because respondents suffered no prejudice. Petitioner further asserts that, because the error was harmless, it was improper for the Court of Special Appeals to vacate the jury's verdict. Respondents reply that the trial court erred in submitting any issue other than damages to the jury because the jury had been advised that liability was not contested and it was not disputed that Flores was the driver of the vehicle. Respondents assert also that submitting the driver-identification issue to the jury resulted in substantial prejudice, as evidenced by the small amount of damages awarded in relation to the damages proved.

Respondents claim that submitting the driver-identification issue to the jury was reversible error. We need not decide whether the trial court erred, because, assuming *arguendo* that it was error for the trial court to submit the first question to the jury, the ultimate question is whether prejudice resulted.

Respondents rely on *Fry v. Carter,* 375 Md. 341, 825 A.2d 1042, to support the assertion that the driver-identification

question was prejudicial because it distracted the jury from focusing on the determination of damages. In *Fry,* a traffic control manager was killed alongside a highway when he was struck by roof trusses extending over the side of a passing flat-bed tractor-trailer. *Id.* at 344, 825 A.2d at 1043. The issue in *Fry* was whether the defendant tractor-trailer driver was negligent, not whether the defendant could have avoided the accident at the last minute. *Id.* at 355, 825 A.2d at 1050. Nevertheless, the trial court instructed the jury on unavoidable accidents. *Id.* We held that it was error for the trial court to give an unavoidable accident instruction in a negligence action. *Id.* at 347, 825 A.2d at 1045. Moreover, we held that the instruction was prejudicial and constituted reversible error. We stated as follows:

> "The unavoidable accident instruction was prejudicial because it permitted the jury to speculate as to whether [the defendant] could have avoided the accident at the last minute ... Suggesting to the jury that it could decide the case on the grounds that the event was unavoidable was misleading because it diverted juror attention from the pivotal issue in the case—negligence. *The verdict in this case was a general verdict; thus it is unclear how the jury reached its verdict. The jury might have relied upon the unavoidable accident instruction as a basis for its verdict."*

*Id.* at 356, 825 A.2d at 1050 (citations omitted) (emphasis added).

Respondents argue that the reasoning in *Fry* applies to the case *sub judice* because the jury was distracted from the issue of damages when it had to consider an issue conceded and resolved through stipulation. We disagree. *Fry* addressed an improper jury instruction and the case *sub judice* concerns a question submitted to the jury. Moreover, it was unclear in *Fry* how the jury reached its verdict because it was a *general* verdict. Because we were unable to determine the conclusions utilized by the jury in making its decision, it was possible and probable that the jury relied on the improper instruction as a basis for its verdict. In the instant case, there was a special verdict. The special verdict sheet required that the jury

provide a separate answer to the driver-identification question. The jury's verdict to this question was *in favor* of respondents and, even if submitting the question to the jury was error because the issue had been resolved by stipulation, there is nothing in this record, other than the verdict itself, to suggest that the question distracted the jury from reaching a fair and proper verdict on the question of damages. The question did not prejudice respondents.

Respondents, as well as the Court of Special Appeals, rely on *Bloom v. Graff,* 191 Md. 733, 63 A.2d 313 (1949). In *Bloom,* the parties stipulated in open court that "if a verdict is found in favor of the plaintiff it should be in the amount of $896.09." *Id.* at 736, 63 A.2d at 315. In instructing the jury, however, the trial court stated that "[i]f you want to find for the plaintiffs you don't have to bring in a verdict of $869.09." *Id.* The jury rendered a verdict in favor of the plaintiff for $250. *Id.* at 735, 63 A.2d at 314. We held that it was error for the court to allow the jury to find contrary to the agreement of the parties and we entered a final judgment for $869.09. *Id.* at 737, 63 A.2d at 315.

The Court of Special Appeals concluded that "[a]s in Bloom, the circuit court erred by ignoring the stipulation between [the Bells] and Flores." The instant case and *Bloom* are markedly different. In *Bloom,* the trial court told the jury it could disregard the parties' stipulation and that it could render a verdict contrary to the parties' agreement. In the case *sub judice,* the trial court merely submitted a question to the jury, and the jury returned a verdict consistent with the stipulation. There was no prejudice.

 Submission of issues or questions to the jury does not necessarily constitute reversible error, particularly when the question is answered in favor of the complaining party. In *Kruszewski v. Holz,* 265 Md. 434, 290 A.2d 534 (1972), the trial court submitted a question to the jury although the information sought by the question was uncontested. Specifically, the trial court asked, "Did Dr. Richard G. Holz obtain [appellant's] consent through misrepresentation?" *Id.* at 446, 290 A.2d at

541. Appellant in that case argued that it was conceded on her part that Dr. Holz did not deliberately lie nor intentionally misrepresent the facts in order to obtain her consent to the operation. *Id.* at 446–47, 290 A.2d at 541. Appellant further asserted that the question should not have been submitted to the jury because it prejudiced her cause for the jury to think she was making the contention referenced in the question. *Id.* at 447, 290 A.2d at 541. This Court held that it was not reversible error for the trial court to submit the question to the jury because the "question had to be answered in the negative." *Id.* Moreover, we stated that, "[w]e think her apprehension on this point is totally unwarranted." *Id.*

The facts and rationale of *Kruszewski* are applicable to the instant case. Here, respondents are concerned that submission of the driver-identification question prejudiced their cause by confusing the jury, about the stipulation and evidence on one hand and the court's questions on the other. Respondents assert that the confusion manifested itself in a substantially reduced verdict.[3] Nevertheless, the jury answered the question in accordance with respondents' view of the stipulation, and there is no evidence on the record indicating that the damages award was influenced by the submission of the driver-identification question. As in *Kruszewski*, it was not reversible error to include the driver-identification question on the jury verdict sheet. The driver-identification question, answered in accordance with the parties' stipulation, did not prejudice respondents.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.*

---

3. The jury was responsible for determining the injuries and resulting damages related to Ronald Bell's accident with Flores as opposed to Bell's second accident, which occurred seventeen days later. This was a complicated issue, but it is not probable that submission of the driver-identification question affected the jury's ability to determine damages.