20 A.3d 765

Janay BARKSDALE

v.

Leon WILKOWSKY, et al.

No. 66, Sept. Term, 2010.

Court of Appeals of Maryland.

May 23, 2011.

650

David F. Albright, Jr. (Bennett & Albright, P.A., Baltimore, MD), on brief, for Respondents.

Frank F. Daily (Lisa M. Morgan and Sean P. Edwards of The Law Offices of Frank F. Daily, P.A., Hunt Valley, MD), on brief, for Respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, J.

In this lead paint case, we revisit the standard for determining "harmless error" in a civil case involving a faulty jury instruction. The Petitioner, Janay Barksdale, sued the owners of her childhood home (the "Owners"), alleging injuries from lead paint on the premises. At trial, the Owners questioned Barksdale's grandmother whether she had ever notified them of flaking and peeling paint in Barksdale's home. The Owners then requested a jury instruction indicating that a person's failure to report flaking paint to the landlord is evidence of negligence. The trial court gave the instruction, even though the grandmother's negligence was not attributable to Barksdale, and Barksdale herself was too young to

have any duty to report. The jury issued a verdict in favor of the Owners.

On appeal, the Court of Special Appeals upheld the jury verdict. It held that the jury instruction was erroneous, but also harmless. Barksdale sought review from this Court on a number of issues. We granted *certiorari* to review the following questions, all involving the issue of "harmless error" from an erroneous jury instruction:

1) Whether the Court of Special Appeals correctly interpreted [and applied [1]] the harmless error standard for a substantive jury instruction as enunciated by the Court of Appeals?

2) Whether the Court of Special Appeals' interpretation of the harmless error standard for a substantive jury instruction is incorrect for a statutorily protected class such as lead poisoned children?

3) Whether the Court of Special Appeals' interpretation and application of the harmless error standard for a substantive jury instruction is constitutional?

We shall hold that the inclusion of the erroneous jury instruction *was not* harmless error, and reverse the judgment of the Court of Special Appeals.

## FACTS AND LEGAL PROCEEDINGS

Janay Barksdale lived with her grandmother at 2440 West Baltimore Street (the "Property") for eleven years, from her birth in 1988 until her grandmother moved in 1999. Later, as a teenager, Barksdale was diagnosed with "mild mental retardation," with a low IQ score and impaired senses. These impairments have limited her ability to read, her verbal language abilities, and her mathematical reasoning. Barksdale attended school through the sixth grade, later working

---

1. In the petition for writ of certiorari, Barksdale presented two separate issues regarding (1) the Court of Special Appeals's interpretation of the standard and (2) the Court of Special Appeals's application of that standard. We have combined them here for the sake of brevity.

briefly at a fast food restaurant. She has expressed an interest in becoming a medical assistant, security guard, or computer technician. According to expert testimony, however, it would be extremely difficult for Barksdale to "obtain and maintain competitive employment" due to these impairments.

Seeking redress for these injuries, Barksdale initiated the current suit, naming the Owners as defendants.[2] Barksdale alleged that, during her residence in the Property, she was exposed to chipping and peeling lead paint that caused her permanent mental injury. She alleged that the Owners never inspected the property or notified their tenants of the potential dangers of lead-based paint. Barksdale introduced medical records demonstrating that she had elevated blood levels as a child, and expert testimony linking those blood levels to her current impairments.

Yet, Barksdale was able to present only limited evidence of lead paint in the Property. After she and her grandmother moved out of the house, the Property sat vacant, until being purchased and "gut rehab[bed]" by a new owner in 2005. This owner replaced all interior walls and old window frames, and did not test for lead paint. Thus, there was no scientific record of the paint that existed during Barksdale's residency. Instead, Barksdale commissioned a test of the property on August 8, 2008, which revealed lead-based paint at one location—the staircase newel post. Barksdale relied on this test, her observations of chipping and flaking paint, and her elevated blood lead levels to claim that the source of her exposure to lead was the Property.

The Owners contested this allegation on a number of levels. They introduced evidence of Barksdale's mother's behavior during pregnancy, which included drinking and smoking. They also called an expert witness who testified that Barksdale's impairments were likely caused by something other

---

**2.** The property was owned by G & S Real Estate, whose two partners, Stewart Sachs and Ronald Greenwald, were also named as defendants. The original complaint included Leon Wilkowsky as a defendant, but he was dismissed from the case prior to trial.

than lead paint poisoning. They argued that Barksdale's lead levels were close to the average lead level in children during the 1970's.[3] They introduced an expert witness who testified that Barksdale could find employment, and who reported that Barksdale herself stated that she left her previous job to take care of her children, and that she "didn't see herself as working" in her adult life.

Furthermore, over the objection of Barksdale, the Owners implicitly introduced the issue of whether Barksdale's grandmother was somehow at fault. Although the Owners did not explicitly argue that Barksdale's grandmother was contributorily negligent or a superseding cause, the Owners questioned Barksdale's grandmother as to whether she had ever reported the chipping and flaking paint to them. She admitted that she had not done so. At the close of the trial, the Owners requested the jury instruction at issue in this appeal, relating to a tenant's obligation, under Baltimore City Housing Code Article 13, Section 902, to report certain conditions to the landlord. The trial court included the instruction in the middle of its longer instruction regarding the Baltimore City Housing code, stating as follows:

> The violation of a statute which is a cause of [Barksdale's] injuries or damages is evidence of negligence. The Baltimore City Housing Code states as follows; Section 103; purpose. The purpose of this code is to prevent all conditions in and about dwellings which are now or which may in the future become so unsafe, dangerous, unhygienic or insanitary as to constitute a menace to the health and safety of the people.
>
> Section 702; good repair and safe conditions. Every building and all parts thereof used or occupied as a dwelling shall be kept in good repair in safe condition. Section 703;

---

3. Blood lead levels are generally measured in micrograms of lead per deciliters of blood. *See, e.g.,* Centers for Disease Control and Prevention, "Lead," *available at:* http://www.cdc.gov/nceh/lead/ (last visited May 3, 2011). Barksdale's levels measured between 11 and 18, and an expert witness at trial testified that "[i]n 1976 the average blood lead level in the United States was 14.6."

standards for good repair and safe condition. Good repair and safe condition shall include, but is not limited to the following standards; interior walls and floors shall be maintained free of loose materials.

Section 706; painting. All interior loose or peeling wall covering or paint shall be removed and the exposed surface shall be placed in a smooth and sanitary condition. Section 1001; prohibited occupancies. No owner shall lease or permit the subletting to another for occupancy and vacant or vacated dwelling or dwelling unit which does not comply with the provision of this code.

**Section 902A; every occupant of a dwelling or a dwelling unit shall keep in a clean and sanitary condition that part of the dwelling unit and the premises thereof which he occupies and controls. A clean and sanitary condition[ ] shall include, but is not limited to the following standards; walls and windows.**

The Baltimore City Code of public local laws provides as follows ... in any written or oral lease or agreement for rental of a dwelling intended for human habitation, the landlord shall be deemed to covenant and warrant that a dwelling is fit for human habitation.

The Baltimore City Housing Code places a continuous duty on the landlord to maintain the property and keep it free of chipping, peeling and flaking paint at all times. It is not a violation of the law for lead paint to be present in a property. You are instructed that as a matter of law there is no evidence that the house where [Barksdale] lived was painted with lead-based paint by the Defendants.

(Emphasis added).

On appeal, the Court of Special Appeals held that the facts of this case did not justify the instruction:

Here, the requested instruction regarding the occupant's duties to maintain the Property in a clean and sanitary condition, the obligation pursuant to § 902A, was not relevant to the issues before the jury, i.e., whether the landlord was negligent or engaged in deceptive trade practices in

renting the Property. Whether Ms. Barksdale's grandmother kept the Property clean had no bearing on the jury's assessment of those issues.

In *Bartholomee v. Casey*, 103 Md.App. 34, 66, 651 A.2d 908 (1994), *cert. denied*, 338 Md. 557, 659 A.2d 1293 (1995), a lead paint case, this Court stated that it "would have been error for the trial court to instruct the jury to find in favor of [the defendants] based on the parents' actions." The Court explained that "[t]he law in Maryland is clear that the negligent acts of a parent cannot be imputed to the minor child, and that negligent acts of the parent that merely contribute to the injury do not necessarily rise to the level of superseding causation." *Id.* n. 16 (citing *Caroline v. Reicher*, 269 Md. 125, 304 A.2d 831 (1973)).

There was no argument here that the grandmother's actions or inactions were a superseding cause of Ms. Barksdale's injuries. Accordingly, the instruction regarding § 902 was irrelevant under the facts of this case, and the court erred in instructing the jury on § 902 of the Housing Code.

*Barksdale v. Wilkowsky*, 192 Md.App. 366, 384–85, 994 A.2d 996, 1007 (2010).[4]

Recognizing the second step of an error analysis, the intermediate appellate court examined whether the error was harmless, by considering whether "the error was likely to have affected the verdict below":

Ms. Barksdale has not *met her burden of showing prejudice.* The court's instructions made clear that the relevant issue for the jury was the conduct of appellees, not anything done by the occupants. The court instructed that a "minor cannot be held responsible for the negligence of the minor's parent, guardian or custodian." It also instructed that it was [the Owners] who had the duty to "maintain the proper-

---

**4.** Although requested by the Owners, we did not grant *certiorari* on the correctness of giving the instruction. For the purposes of this appeal, therefore, we proceed with the assumption that the Court of Special Appeals was correct and that this instruction was erroneous.

ty and keep it free of chipping, peeling and flaking paint at all times." Thus, the jury clearly was advised that appellees had a duty to keep the Property free of chipping paint and that Ms. Barksdale could not be held responsible for any negligence on the part of her grandmother. Moreover, there was no suggestion during closing argument that [the Owners] were relieved in any way of their statutory obligations to keep the premises free of chipped or flaking paint or that [the grandmother] was contributorily negligent for failing to clean up any chipped paint. Thus, although the court erred in giving the instruction, it was harmless error that does not require a new trial.

*Barksdale,* 192 Md.App. at 385–86, 994 A.2d at 1007 (citations omitted) (emphasis added). The Court of Special Appeals thus affirmed the jury verdict despite the erroneous instruction.

## DISCUSSION

■ The ultimate issue before this Court, presented as three different sub-issues, is whether the inclusion of the erroneous jury instruction in this case requires reversal of the jury verdict. "It has long been the policy in this State that this Court will not reverse a lower court judgment if the error is harmless." *Flores v. Bell,* 398 Md. 27, 33, 919 A.2d 716, 719 (2007). *See also Greenbriar v. Brooks,* 387 Md. 683, 740, 878 A.2d 528, 563 (2005); *Crane v. Dunn,* 382 Md. 83, 91, 854 A.2d 1180, 1185 (2004).[5] The harmless error rule "embod[ies] the principle that courts should exercise judgment in preference

---

**5.** Although "harmless error" is now universally recognized, in some form, this was not true at common law. For over a century, English courts operated under a rule, originating in *Crease v. Barrett,* 1 C.M. & R. 919, 149, Eng. Rep. 1353, 1359 (Ex. 1835), in which an erroneous exclusion or admission of evidence required automatic reversal. *See* 1 Wigmore, Evidence § 21 (1983) (explaining the invention and development of the "harmless error" rule in the context of evidentiary rulings); *see also* 1 Steven Alan Childress & Martha S. Davis, *Federal Standards of Review* § 6.05 (4th ed. 2010) (describing U.S. federal courts departure from "the old rule of presumed reversal" towards the harmless error rule).

to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *Williams v. State*, 394 Md. 98, 120, 904 A.2d 534, 547 (2006) (Raker, J., dissenting) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553, 104 S.Ct. 845, 848–49, 78 L.Ed.2d 663 (1984)).

■ We will examine, in turn, the two issues which often comprise the harmless error analysis: (1) whether the complaining party is entitled to any presumption of prejudice, and (2) how a party can satisfy its burden of showing prejudice. We will then apply these standards to the facts in this case.

### I. "Harmless Error" Analysis and Presumptions of Prejudice

The question of whether a complaining party is entitled to a presumption of prejudice is an important, and often dispositive, question. The test that courts have employed varies by the context of the case—civil or criminal—and by the type of error alleged. As the Second Federal Circuit has described, courts analyzing prejudice have looked to the degree to which the conduct of the trial has violated basic concepts of fair play. *See Kyle v. United States*, 297 F.2d 507, 514 (2nd Cir.1961). The *Kyle* court explained:

> The reason why the showing of prejudice required to bring down the balance in favor of a new trial will vary from case to case is that the pans contain weights and counterweights other than the interest in a perfect trial. Sometimes only a small showing of prejudice, or none, is demanded because that interest is reinforced by the necessity that 'The administration of justice must not only be above reproach, it must also [be] beyond the suspicion of reproach,' and by the teaching of experience that mere admonitions are insufficient to prevent repetition of abuse. In other cases, where the conduct of the trial has been less censurable, or not censurable at all, a greater showing of prejudice is demanded, because the interest in obtaining an ideal trial, with the trier of the facts considering all admissible evi-

dence that has ever become available, and nothing else, is not thus supplemented and may be outweighed by the interest in avoiding a retrial unlikely to have a different outcome[.]

*See Kyle v. United States,* 297 F.2d 507, 514 (2nd Cir.1961).[6]

In civil cases, Maryland courts have varied the tests based on the relative gravity of the error. For the more egregious civil errors, Maryland employs a presumption of prejudice. *See Murrell v. Mayor & City Council of Baltimore,* 376 Md. 170, 197, 829 A.2d 548, 564 (2003) (prejudice presumed where written agency decision was issued by someone other than hearing officer, in violation of city procedural statute); *Wyatt v. Johnson,* 103 Md.App. 250, 653 A.2d 496 (1995) (prejudice presumed when the court refused to provide jury with a verdict sheet itemizing damages in a personal injury case); *King v. State Roads Comm'n,* 284 Md. 368, 396 A.2d 267 (1979) (when trial court erroneously struck five extra jurors to obtain panel of 12 after both parties exercised peremptory challenges, prejudice would be presumed, provided that, on remand, the record reflected that appellant objected to trial court's procedure).[7] *But see St. Luke Evangelical Lutheran Church v. Smith,* 318 Md. 337, 568 A.2d 35 (1990) (When trial court gave defendant extra four strikes, but also increased

---

6. Although *Kyle v. United States,* 297 F.2d 507 (2nd Cir.1961), was a criminal case, and much of its discussion is unique to that context, we find that the above discussion regarding the "spectrum" of errors is useful in civil cases as well.

7. In a Kentucky case, the state Supreme Court justified a civil presumption of prejudice when the jury was erroneously constituted as follows:

The requirement of a showing of actual prejudice effectively nullifies the requirements of the rule on allocation of peremptory challenges. To show actual prejudice, the complaining litigant would be required to discover the unknowable and to reconstruct what might have been and never was, a jury properly constituted after running the gauntlet of challenge performed in accordance with the prescribed rule of the game. Add to this the further obstacle that it is the policy of the law to look with disfavor on attempts to invade the jury's internal process of decision to impeach verdicts except in relatively rare instances. *Kentucky Farm Bureau Mut. Ins. Co. v. Cook,* 590 S.W.2d 875, 877 (Ky.1979) (footnote omitted).

plaintiff's strikes by four, no prejudice presumed because the parties were left in effectively the same position as before court's action).

We have previously justified this presumption of prejudice in the civil context on the need to provide for hearty review of trial errors. *See Harris v. Harris,* 310 Md. 310, 319–20, 529 A.2d 356, 360–61 (1987). In *Harris,* we considered the erroneous disqualification of one of the party's attorneys. In addressing whether that error was harmless, we relied on a presumption of prejudice due to the practical impossibility of proving prejudice:

> If it is established on appeal that the disqualification was in error, we shall presume that the disqualified attorney's former client has been prejudiced and the burden will be on the party advantaged by the erroneous disqualification to prove that the disqualification did not influence the outcome of the litigation. As we see it, the presumption of prejudice, by relieving the complaining party of the burden of establishing prejudice, **renders a disqualification order subject to effective postjudgment review.**

*Id.*

█ Other than these limited circumstances, the burden to show error in civil cases is on the appealing party to show that an error caused prejudice. *See Flores,* 398 Md. at 33, 919 A.2d at 719; *Greenbriar,* 387 Md. at 740, 878 A.2d at 563; *Crane,* 382 Md. at 91, 854 A.2d at 1185; *Beahm v. Shortall,* 279 Md. 321, 330, 368 A.2d 1005, 1011 (1977); *Klingensmith, Inc. v. Snell Landscape Contractor, Inc.,* 265 Md. 654, 662, 291 A.2d 56, 60 (1972); *M.A. Realty Co. v. State Roads Comm'n,* 247 Md. 522, 527, 233 A.2d 793, 797 (1967); *State Roads Comm'n v. Kuenne,* 240 Md. 232, 235, 213 A.2d 567, 568 (1965).

Although most of the harmless error analyses in civil law cases involve erroneous exclusion or admission of evidence, it is also clear that a party complaining of an erroneous jury instruction in a civil case must show prejudice. *See Fry v. Carter,* 375 Md. 341, 355, 825 A.2d 1042, 1050 (2003) ("A

judgment [regarding jury instructions] will not be reversed unless the complaining party can show both error and prejudice."); *Bowser v. Resh,* 170 Md.App. 614, 648, 907 A.2d 910, 930 (2006) (in civil case involving "inadvertent" error in jury instructions, "the appellant must show not only error but prejudicial error" to succeed on appeal).

Here, Barksdale has suggested, in novel arguments, that she should be entitled to a presumption of prejudice. First, Barksdale argues that a presumption should be afforded to "a statutorily protected class such as lead poisoned children[.]" Second, she contends that a defective jury instruction jeopardizes the constitutional guarantees of relief for injury, trial by jury, and due process, and therefore warrants a presumption of prejudice.

We have never recognized a presumption of prejudice from error based on the personal characteristics of the complaining party, and Barksdale has provided no meaningful support for her arguments for such a presumption.[8] We decline to undermine decades of case law supporting our harmless error analysis in order to create a special rule in this case.

## II. Satisfying the Burden of Showing Prejudice

Our determination that the complainant has the burden to prove prejudice does not resolve this dispute. Our inquiry

---

**8.** In addition to these alleged constitutional violations, Barksdale argues that the harmless error standard applied by the trial court violated the Maryland Declaration of Rights, Art. 46, which protects against sex discrimination. She states:

> Ms. Barksdale is the mother of several pre-school age children; as a woman, her earnings expectations and her worklife expectancy are less than a man of similar age, intelligence, and background. Accordingly, any denial of compensation for a woman disproportionately impacts her vis-a-vis a similarly situated man. Thus, a jury instruction which potentially leads to the denial of compensation should be subject to a strict scrutiny test when the victim is a woman.

In a civil tort case, application of any rule of civil procedure potentially leads to the denial of compensation. Thus, under Barksdale's theory, in which any denial of compensation disproportionately impacts a woman, a female tort plaintiff would be entitled to an entirely different set of rules than a male plaintiff. This result is clearly unsustainable under the very constitutional provisions invoked by Barksdale.

then becomes: what is sufficient to show prejudice in a civil jury instruction error? The harmless error test is one for which Maryland courts, like many other jurisdictions, have declined to establish "precise standards." *See Flores,* 398 Md. at 33, 919 A.2d at 720; *Beahm,* 279 Md. at 331, 368 A.2d at 1011 ("Precise standards for the degree of prejudice required for reversal, have not been, and perhaps cannot be, established."). Instead, we have determined prejudice based on the facts of each individual case. *See id.; State Deposit Ins. Fund Corp. v. Billman,* 321 Md. 3, 17, 580 A.2d 1044, 1051 (1990) ("In determining whether [the error] prejudicially affected the outcome of a civil case, the appellate court balances the probability of prejudice from the face of the extraneous matter with the circumstances of the particular case[.]"). Although a certain amount of generality is needed to retain flexibility in application of the rule, we will examine how Maryland courts, and other courts, have made determinations on prejudice, in order to flesh out the analytical framework.

■ We have described the required showing of prejudice in multiple ways, alternatively stating that the complainant must show that prejudice was "likely" or "substantial." *Crane,* 382 Md. at 91, 854 A.2d at 1185 (using likely and substantial interchangeably); *Beahm,* 279 Md. at 331, 368 A.2d at 1011 (substantial); *Fry,* 375 Md. at 356, 825 A.2d at 1050 (substantial). We have been consistent, though, in stating that the "focus of our inquiry is on the probability, not the possibility, of prejudice." *Flores,* 398 Md. at 33, 919 A.2d at 720; *Harford Sands, Inc. v. Groft,* 320 Md. 136, 148, 577 A.2d 7, 12–13 (1990) (same); *Hance v. State Roads Comm'n,* 221 Md. 164, 176, 156 A.2d 644, 651 (1959) ("substantial prejudice [must] be shown"). Thus, the general rule is that a complainant who has proved error must show more than that prejudice was *possible;* she must show instead that it was *probable.*[9]

---

**9.** The Ninth Circuit Court of Appeals described a similar, burden-less test as follows:

> While this standard of review is less stringent than review for harmless error in a criminal case, it is more stringent than review for

In some cases, the harmlessness of the error is readily apparent. For example, an error in evidence is harmless if identical evidence is properly admitted. *See, e.g., Beahm,* 279 Md. at 332, 368 A.2d at 1012 (erroneous admission, as substantive evidence, of non-treating physician's testimony was harmless error because same testimony was properly admitted from treating physician); *Hollingsworth & Vose Co. v. Connor,* 136 Md.App. 91, 134–35, 764 A.2d 318, 341–42 (2000) (error of admitting one expert's testimony was harmless because another expert's testimony, which was properly admitted, was substantially similar). Moreover, erroneous instructions can be harmless if the Court takes appropriate steps to cure that error. *See, e.g., Kruszewski v. Holz,* 265 Md. 434, 290 A.2d 534 (1972) (erroneous jury instruction was not prejudicial because trial judge gave clarifying instruction which was not objected to by either party).

Other cases have required a more flexible inquiry, involving factors that sometimes resemble the factors that justify a presumption in other contexts. In *Safeway Stores v. Watson,* 317 Md. 178, 183–84, 562 A.2d 1242, 1245 (1989), for example, we considered whether the wrongful sequestration of a civil corporate defendant's designated representative under former Md. Rule 2–513 [10] was a harmless error. We analyzed multi-

---

sufficiency of the evidence in which we view the evidence in the light most favorable to the prevailing party. In reviewing a civil jury instruction for harmless error, the prevailing party is not entitled to have disputed factual questions resolved in his favor because the jury's verdict may have resulted from a misapprehension of law rather than from factual determinations in favor of the prevailing party.

*Gambini v. Total Renal Care, Inc.,* 486 F.3d 1087, 1093 (9th Cir.2007). *See also Haddad v. Lockheed Cal. Corp.,* 720 F.2d 1454, 1459 (9th Cir.1983) ("Just as the verdict in a civil case need only be more probably than not true, so an error in a civil trial need only be more probably than not harmless.").

**10.** Rule 2–513(a) provided as follows:

On motion of any party made before testimony begins the court shall order that witnesses other than parties be excluded from the courtroom before testifying, and it may do so on its own initiative or on motion of any party made after testimony begins. The court may

ple extrinsic factors, including the rights of the disadvantaged party, and the purpose that having a representative at trial serves. In a dual holding, we applied a presumption of prejudice *and* held that the appellant had demonstrated prejudice:

> We conclude that it is appropriate to presume prejudice from the wrongful exclusion of a party, or its representative, from a trial. Experienced trial attorneys and judges understand the importance of "humanizing" a corporate defendant in a jury trial. Moreover, a party is entitled to be present to have a firsthand view of the proceedings for purposes of evaluating the constantly changing prospects or exigencies for settlement, and to participate in tactical decisions that must be made, sometimes quickly, in the course of a trial. Finally, the attorney for Safeway was deprived of the presence at his side of the principal investigator in the case. Whether we consider these facts as mounting up to the necessary proof of prejudice by Safeway, or simply consider them in determining that a presumption of prejudice is appropriate in this case, the result is the same. The claimant has not overcome the proof or presumption, and the result must be a new trial.

*Id.* at 184, 562 A.2d at 1245–46. Examination of *Safeway Stores* and other cases suggests that there is a fine line between presuming prejudice due to the magnitude and importance of the error, and declaring that the burden has been met due to the materiality of the error and its relation to the issues in the case.[11]

---

> continue the exclusion of a witness following the testimony of that witness if a party indicates that the witness may be recalled to give further testimony. A party that is not a natural person may designate a representative to remain in the courtroom, even though the representative may be a witness. An expert witness who is to render an opinion based on testimony given at the trial shall be permitted to remain during that testimony.

**11.** *Cf. Blaney v. Int'l Ass'n of Machinists & Aerospace Workers,* 151 Wash.2d 203, 87 P.3d 757, 761 (2004) (providing a presumption of prejudice in erroneous civil jury instructions, but affirming the review-

■ When prejudice is not readily apparent, a reviewing court must focus on the context and magnitude of the error. Maryland Rule 5–606 strictly limits a court's ability to inquire, post-verdict, into "the sworn juror's mental processes in connection with the verdict." [12] Thus, a court cannot "unbake" the jury verdict and examine the impact of any one ingredient.[13] In the criminal context, this difficulty has led Maryland to adopt a presumption of prejudice for errors, which may be rebutted by the State.[14] Although, in the civil context, this

---

ing court's duty to "scrutinize the entire record in each particular case, and determine whether or not the error was harmless or prejudicial.").

12. Md. Rule 5–606 applies to civil and criminal cases, and provides, in pertinent part:

(1) In any inquiry into the validity of a verdict, a sworn juror may not testify as to (A) any matter or statement occurring during the course of the jury's deliberations, (B) the effect of anything upon that or any other sworn juror's mind or emotions as influencing the sworn juror to assent or dissent from the verdict, or (C) the sworn juror's mental processes in connection with the verdict.

(2) A sworn juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may not be received for these purposes.

13. The court, of course, can acquire additional insight when the jury is asked to give a special verdict. *See Flores v. Bell*, 398 Md. 27, 36, 919 A.2d 716, 721 (2007) (although question was erroneously submitted to the jury, the jury returned a special verdict favorable to disadvantaged party on that issue); *K & K Mgmt. v. Lee*, 316 Md. 137, 149–50, 557 A.2d 965, 971 (1989) (although court erroneously denied request to submit an issue to the jury, the jury's special verdict demonstrated that jury would not have reached the issue); *see also Moore v. Preventive Med. Medical Group, Inc.*, 178 Cal.App.3d 728, 223 Cal.Rptr. 859, 870–71 (1986) (erroneous submission of "proximate cause" instructions to the jury, as opposed to "legal cause," was harmless because the jury was instructed on "legal cause" and returned a verdict using the language of legal, and not proximate, cause).

14. *See, e.g., Jenkins v. State*, 375 Md. 284, 316, 825 A.2d 1008, 1027 (2003) ("The harm done is patent due to the difficulty of proving such contentions post-verdict[.] Therefore, a presumption of prejudice is appropriate in such cases."); *Hayes v. State*, 355 Md. 615, 636, 735 A.2d 1109, 1120 (1999) (substitution of an alternate juror is prejudicial if done after the jury "closes the door" to deliberate; this standard is practical because "it can be established through objective and extrinsic evidence, without the need to question jurors as to what went on in the jury room after the door was closed[.]").

same difficulty does not give rise to a universal presumption of prejudice, it does shape the applicable harmless error test.

*Fry v. Carter*, 375 Md. 341, 825 A.2d 1042 (2003), demonstrates this point. In *Fry*, a highway construction worker was killed when a trucker, carrying roof trusses which protruded off the side of his vehicle, struck the construction worker on his head when driving by the construction site. The deceased workers' family brought suit against the truck driver for negligence. After the close of evidence, the judge gave an "unavoidable accident" instruction to the jury, over the objection of the plaintiff, stating as follows:

> An unavoidable accident is an inevitable occurrence which is not to be foreseen or prevented by vigilance, care, and attention and not occasioned by or contributed to in any manner by an act or omission of the party claiming the accident was unavoidable. And in this case, the defendant claims that the accident was unavoidable.

*Id.* at 346–47, 825 A.2d at 1045. The jury returned a verdict in favor of the defendant, and the case reached this court on the allegedly erroneous jury instruction.

On appeal, we analyzed a number of cases involving "unavoidable accident" instructions, we held that there was significant evidence of negligence in that case, and that "[g]iven evidence that the accident was not unavoidable, the trial court erred in instructing the jury on unavoidable accident." *Id.* at 355, 825 A.2d at 1050. The *Fry* Court then considered whether the error required reversal of the jury verdict, analyzing the injection of the "unavoidable accident" concept in the context of the case and concluding:

> The unavoidable accident instruction was prejudicial because it permitted the jury to speculate as to whether [the defendant] could have avoided the accident at the last minute. . . . Suggesting to the jury that it could decide the case on the grounds that the event was unavoidable was misleading because it diverted juror attention from the pivotal issue in the case—negligence. The verdict in this case was a general verdict; thus it is unclear how the jury

reached its verdict. The jury might have relied upon the unavoidable accident instruction as a basis for its verdict. *Id.* at 356, 825 A.2d at 1050.

Our decision in *Fry* did not set forth a specific standard, nor did it create an automatic presumption of prejudice. Instead, *Fry* declares prejudicial those jury instructions which are "misleading" and "distracting," and "permit[ ] the jury to speculate as to [improper issues which may be dispositive]." *Fry,* 375 Md. at 356, 825 A.2d at 1050. More generally, *Fry* holds that a complainant must satisfy her burden regarding prejudice by showing the *nature* of the erroneous jury instruction and its *relation* to the issues in the case. A reviewing court can then weigh the materiality of the error and the potential that it poisoned the jury deliberations.

■ In some cases, when it is practically impossible for the court to separate the erroneous instruction from the issues in the case, the mere uncertainty as to prejudice may be grounds for holding an error is reversible. *See Flores,* 398 Md. at 35, 919 A.2d at 721 (describing the holding in *Fry* as follows: "Because we were unable to determine the conclusions utilized by the jury in making its decision, it was possible and probable that the jury relied on the improper instruction as a basis for its verdict."); Roger J. Traynor, *The Riddle of Harmless Error* 64 (1970) (observing that an error "can be declared prejudicial for the simple reason that the court is unable to declare a belief one way or the other as to the probable effect of the error on a particular judgment. There is also the preeminent reason that such errors are so subversive of the judicial process as to make reversal necessary.").

Reviewing the approaches of other federal and state courts, we see a similar focus on how the instruction interacted with the evidence in reviewing whether erroneous jury instructions were prejudicial. In *Lindstrom v. Yellow Taxi Co. of Minneapolis,* 298 Minn. 224, 214 N.W.2d 672 (1974), a suit for damages brought by injured passengers in a taxi cab, the trial court used jury instructions containing a mix of the "reasonable care" standard, which was wrong, and the correct, higher

standard of care required under Minnesota law for common carriers.[15] After the jury returned a verdict for the taxi company, the trial court granted a motion for a new trial. On appeal, Minnesota's Supreme Court analyzed the extent to which the erroneous instructions had "permeated" the instructions as a whole, and the "material" nature of the mistake:

> The crux of this issue is how many of the original instructions were permeated by the error of failing to instruct on the highest degree of care. Defendant views the error on the standard of care as limited to the single instruction on the ordinary-care standard (Instruction 101), which was cured by the trial court's withdrawal and corrective instructions. Plaintiffs submit that the fundamental error was not limited to the court's giving of Instruction 101 but involved repeated references to the ordinary-care standard in related instructions in the charge on common-law rules of the road and proximate cause. It was apparent to the trial court, as it is to this court, that the error was not limited to the giving of Instruction 101 but included repeated references to the ordinary-care standard. The corrective instructions failed to convey clearly to the jury the single standard of care applicable to a common carrier.

*Id.* at 677. *See also LNC Invs. v. First Fid. Bank, N.A.,* 173 F.3d 454, 463 (2nd Cir.1999) (finding prejudice when the error was "integral to the standard of liability because it precluded a finding of causation[,] [and created] an erroneous impression regarding the standard of liability[.]"); *Hathaway v. Coughlin,* 99 F.3d 550, 554 (2nd Cir.1996) (in medical malpractice claim, erroneous instruction that finding of malpractice precluded finding of "deliberate indifference" was not harmless because it "[went] to the very heart of the plaintiff's claim, and

---

**15.** In another case, the Minnesota Supreme Court stated that the elevated standard of care required a taxicab company to exercise "foresight for the safety of its passengers[,]" "to take every reasonable precaution to protect them from injury[,]" and "to have skilled and careful drivers who were alert at all times to discover and avoid danger." *Ford v. Stevens,* 280 Minn. 16, 157 N.W.2d 510, 513 (1968) (citations and quotation marks omitted).

effectively preclude[d] a finding of liability where one may be warranted."); *Hendricks v. Coughlin,* 942 F.2d 109, 113–14 (2nd Cir.1991) (failure to instruct jury that defendants could be liable if they recklessly disregarded plaintiff's rights was not harmless error because it went directly to plaintiff's claim).

At least one California court has undertaken the hard task of outlining the objective factors that a court can consider. *See Nat'l Med. Transp. Network v. Deloitte & Touche,* 62 Cal.App.4th 412, 72 Cal.Rptr.2d 720 (1998). In considering whether an erroneous jury instruction was prejudicial, the court listed the following factors:

> (1) the degree of conflict in the evidence on critical issues; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect; (3) whether the jury requested a rereading of the erroneous instruction or of related evidence; ... and [4] the effect of other instructions in remedying the error.

*Id.* at 731.[16] Although we are hesitant to ascribe to any exclusive list of factors, given the patchwork of harmless error cases, we believe this four factor list is helpful.

### Summary

We summarize the above discussion as follows: a party challenging an erroneous jury instruction in a civil case must demonstrate to the court why the error was prejudicial. An erroneous instruction may be prejudicial if it is misleading or distracting for the jury, and permits the jury members to speculate about inapplicable legal principles. *See Fry,* 375 Md. at 355, 825 A.2d at 1050. An error may also be prejudicial if the error, by itself, could have precluded a finding of

---

**16.** In addition, the *Nat'l Medical* court listed the "closeness of the jury verdict" as a factor to consider. 62 Cal.App.4th 412, 72 Cal.Rptr.2d 720, 731 (1998). In California, only three-fourths of a civil jury must agree to render a verdict. *See* Cal. Const. Art. I, § 16 (2011); Cal. Civ. Pro. § 618 (2011). As Maryland requires a unanimous jury verdict in civil cases, *see* Maryland Rule 2–522, we have excluded this factor as irrelevant.

liability where one was warranted. *See LNC Invs.,* 173 F.3d 454. We have also recommended a non-exclusive, four-factor list for the reviewing court to consider. *See Nat'l Medical Transp. Network,* 72 Cal.Rptr.2d at 731. Moreover, in certain cases, the mere inability of a reviewing court to rule out prejudice, given the facts of the case, may be enough to declare an error reversible. *See* Traynor, *supra* at 64. The reviewing court, in considering these issues, should engage in a comprehensive review of the record, and base its determination on the nature of the instruction and its relation to the issues in the case.

### III. The Erroneous Instruction in This Case

We turn now to apply the above analysis and determine whether the error in this case was prejudicial or harmless. The trial court's error was the inclusion, in its jury instructions, of Section 902A of the Baltimore City Code, stated as follows:

> Section 902A; every occupant of a dwelling or a dwelling unit shall keep in a clean and sanitary condition that part of the dwelling unit and the premises thereof which he occupies and controls. A clean and sanitary condition[ ] shall include, but is not limited to the following standards; walls and windows.

At trial, the Owners requested Section 902A, describing it as "the provision[ ] of the code that talk[s] about tenant obligations as well." The Owners' counsel justified his request as such:

> I'm simply suggesting that that's the problem with taking just a part of the Housing Code. As you get into issues that, you know, these statutes are typically designed in a way that they're not—you know, they impose obligations upon the landlord, but they also recognize some obligations by the tenant. And I feel like what's been proposed is sort of one sided there.

\* \* \*

[C]hipping and flaking paint, I mean, that's sort of an issue[ ] that periodically comes up in these—or that's the issue that is not explored in great depth in these cases, but the question always is, if you saw chipping and flaking paint existing in the house why didn't you clean it up? It's a tough issue to present to Plaintiffs and it's a—you know, sounding callous issue to present to Plaintiffs, but it's an issue. If there was chipping paint in you[r] property I would argue that that constitutes dirt and filth and that's not clean and sanitary. And you don't wait for the landlord to come in and clean it up.

The Owner's counsel concluded that "it's only fair in the interest of completeness that all potentially applicable sections of the Housing Code be read." Barksdale's counsel disagreed, stating that the Owners were "trying to throw in a contributory negligence argument even though my client can't be contrib[utorily negligent]."

On review of this record, the Owners' request for the Section 902A instruction seems to be an outgrowth of their frustration with Maryland's regulatory scheme. It is undisputed that the issues in this case include neither contributory negligence by Barksdale nor a superseding cause of negligence by Barksdale's grandmother. Maryland law has determined that the responsibility of a landlord to protect children from lead paint poisoning is an important one, and thus does not allow the landlord to escape liability by blaming the child or her family. *See, e.g., Caroline v. Reicher*, 269 Md. 125, 304 A.2d 831 (1973) (parent's negligence in failing to prevent child from eating paint chips cannot be a superseding cause to landlord's negligence). In a case like this one, the correct jury instructions, as the Owners' counsel argued at trial, may fail to explore the tenant's failure to clean up chipping paint. In that sense, fairly or unfairly, Maryland has weighted the scale.

The Owners' request for a Section 902A instruction, however, is an impermissible counterweight. Although not explicitly a "superseding cause" or "contributory negligence" argument, it may have served the same purpose and had the same

impermissible effect, *i.e.,* to deflect liability to a third party. As the Owners' argument in favor of the instruction demonstrates, the reason for including the Section 902A instruction was to raise the following question with the jury: "if you saw chipping and flaking paint existing in the house[,] why didn't you clean it up?" The Section 902A instruction, sought by and argued for by the Owners, served no other purpose than to raise this impermissible insinuation.

The Section 902A instruction, therefore, touched on the heart of the case—determining who was responsible for Barksdale's injury—and may have had an insidious impact on the jury's thinking. Jury deliberations, which often address the technical application of law to established facts, are ultimately about apportioning blame, a process which involves the reactions, opinions, emotions, intuition, and reasoning of the jury members. In this process, jury instructions serve the vital purpose of enabling the jurors to sift and sort these varying and conflicting forces, and channel them into a deliberative pathway that leads to a verdict permitted by law. As we described above, the jury was prohibited by law from blaming Barksdale or her grandmother for contributory or superseding negligence, but inclusion of the Section 902A instruction may well have enticed them down that road. At the very least, we are unable to determine if the jury relied on Barksdale's grandmother's conduct in reaching a verdict in favor of the Owners.[17]

The Owners argue instead that, even if the jury were to have found that Barksdale or her grandmother violated Section 902A, the jury instructions as a whole "did not direct or even suggest to the jury that any such finding was attribut-

---

**17.** The Owners suggest, in their brief, that the verdict was a "special verdict," and thus distinguishable from an impenetrable general verdict such as that in *Fry v. Carter*, 375 Md. 341, 825 A.2d 1042 (2003). Here, the verdict did distinguish between the negligence count and the Consumer Protection Act count, yet the verdict was "general" in that it did not break down the negligence count in such a way that this Court can determine whether the jury inappropriately blamed Barksdale's grandmother for her failure to report or clean up the flaking paint.

able to [Barksdale]" or that "the obligations of the landlord were relieved in any way by any action or inaction by [Barksdale's] grandmother with respect to keeping the premises clean, or that [Barksdale's] claim otherwise failed against the [Owners] due to her grandmother's actions or inactions." To be sure, the jury instructions contained other, appropriate, instructions, which, if understood correctly, could have negated any potentially preclusive implications of the Section 902A instruction.[18]

We are not persuaded, however, by the theory of the Owners, who, having sought and argued in favor of such an instruction, now claim that their disputed instruction, once given, was meaningless and necessarily disregarded by the jury. We do not view the potential for prejudice as impermissible speculation or conjecture, as the Owners contend, nor will we assume that the jury followed the correct and contradictory instructions. With an error touching the heart of the litigation, we cannot be sure that the erroneous instructions were "cured" by the correct instructions when both were presented to the jury as equals.

Nor is "tangible evidence" required to show prejudice in this context, as the Owners assert. As we explained, there is no "tangible" proof of prejudice because we cannot read the minds of the jurors. This lack of knowledge was caused not by the failure of Barksdale to present evidence or make an argument regarding prejudice, but by the reality that the Court cannot determine whether the jury actually relied on the impermissible jury instruction. We conclude, therefore, that, Barksdale has carried her burden of showing prejudice.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. REMANDED TO THAT COURT WITH IN-STRUCTIONS TO VACATE THE JUDGMENT OF THE**

---

18. For example, the trial court instructed the jury that "[a] minor cannot be held responsible for the negligence of the minor's parent, guardian or custodian[,]" and that the law "places a continuous duty on the landlord to maintain the property and keep it free of chipping, peeling and flaking paint at all times."

CIRCUIT COURT FOR BALTIMORE CITY AND RE-
MAND TO THE CIRCUIT COURT FOR A NEW TRIAL.
COSTS TO BE PAID BY RESPONDENTS.

BATTAGLIA, J., joins in the judgment only.