*Giant of Maryland LLC v. Karen Webb*, No. 413, September Term, 2019. Opinion by Kenney, J.

**NEGLIGENCE – PREMISES LIABILITY – STANDARD OF CARE – STATUS OF ENTRANT – INVITEES – CARE REQUIRED IN GENERAL**

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he: (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger. But the owner or possessor of land is not an insurer of the safety of his customers while they are on the premises and no presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store.

**LABOR AND EMPLOYMENT – RIGHTS AND LIABILITIES AS TO THIRD PARTIES – WORK OF INDEPENDENT CONTRACTOR – EXTENT OF CONTROL – IN GENERAL**

"General control over an independent contractor's work" would not be sufficient to extend liability to Giant for Mr. Winzer's actions. *See Appiah v. Hall*, 416 Md. 533, 563. To do that, it would be necessary to demonstrate that Giant had "retained control over the operative detail and methods" of Mr. Winzer's work, including "*the very thing from which the injury arose.*" *Id.* at 555 (citing *Gallagher's Estate v. Battle*, 209 Md. 592, 602 (1956)).

**EVIDENCE – ADMISSIBILITY IN GENERAL – MATERIALITY – TENDENCY TO MISLEAD OR CONFUSE**

The Reptile Theory approach is similar to a Golden Rule argument. It encourages jurors to favor personal safety and the protection of family and community; Golden Rule arguments "appeal[] to the jury's own interests" and ask jurors "to place themselves in the shoes of the victim." *Lee v. State*, 405 Md. 148, 171 (2008) (internal citations omitted). When such arguments "invite[] the jurors to disregard their oaths and to become non-objective viewers of the evidence which has been presented to them, or to go outside that evidence to bring to bear on the issue of damages purely subjective considerations" they are improper. *Leach v. Metzger*, 241 Md. 533, 536-37 (1966).

**EVIDENCE – PRESUMPTIONS – EVIDENCE WITHHELD OR FALSIFIED – SUPPRESSION OR SPOLIATION OF EVIDENCE**

Spoliation is "[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usu[ally] a document." *Keyes v. Lerman*, 191 Md. App. 533, 537 (2010). A spoliation instruction is given in a civil case when "a party has destroyed or failed to produce evidence." *Cost v. State*, 417 Md. 360, 370 (2010).

The instruction addresses:

> the destruction or failure to preserve evidence, rendering it unavailable, and not merely the failure to produce evidence that *is* available, or, indeed, the failure to create evidence, but, for purposes of the permissible inference, it does distinguish between destruction or failure to preserve with an intent to conceal the evidence and destruction or failure to preserve that is the product of negligence.

*Keyes*, 191 Md. App. at 540.

Before the instruction may be given, the requestor, "[b]y necessity," has the burden to establish and the court would have to find that the video "actually existed." *Solesky v. Tracey*, 198 Md. App. 292, 309 (2011). There can be no act of destruction or failure to preserve evidence not proven to exist, and therefore no act or omission from which inferences can arise.

## APPEAL AND ERROR – HARMLESS AND REVERSIBLE ERROR – PARTICULAR ERRORS – INSTRUCTIONS – IN GENERAL

Instructions "as to facts and inferences" are not normally required. And when missing evidence permits multiple inferences to be drawn, a trial judge's "emphasis of one possible inference out of all the rest . . . can be devastatingly influential upon a jury although unintentionally so." *Keyes*, 191 Md. App. at 542 (quoting *Yuen v. State*, 43 Md. App. 109, 114 (1979)).

## APPEAL AND ERROR – HARMLESS AND REVERSIBLE ERROR – IN GENERAL – PREJUDICE; PREJUDICIAL ERROR– IN GENERAL

An instruction that "is misleading or distracting for the jury, and permits the jury members to speculate about inapplicable legal principles," is potentially prejudicial. *Barksdale v. Wilkowsky*, 419 Md. 649, 669 (2011).

Circuit Court for Anne Arundel County
Case No. C-02-CV-17-003054

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 413

September Term, 2019

_____

GIANT OF MARYLAND LLC

v.

KAREN WEBB

_____

Leahy,
Wells,
Kenney, James A., III
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Kenney, J.

_____

Filed: February 25, 2021

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Appellee, Karen Webb, was injured on December 4, 2014 while shopping at a supermarket owned and operated by appellant, Giant of Maryland, LLC ("Giant"). On October 25, 2017, she sued Giant in the Circuit Court for Anne Arundel County, advancing two causes of action: (1) negligence and (2) negligent hiring, training, and supervision.[1] A jury returned a verdict in her favor.

In its timely appeal, Giant presents four questions, which we have reordered, slightly rephrased, and consolidated into three for our review:[2]

---

[1] According to her Complaint, an "employee of [Giant] was pushing a shopping cart in one of the shopping aisles as part of his job duties at the premises and within the scope of his employment," and he "failed to safely operate the shopping cart, failed to pay proper time and attention to pushing the shopping cart." Upon learning that the person operating the cart was Keydonne Winzer, an employee of PepsiCo, Ms. Webb amended her complaint on December 22, 2017 to add PepsiCo as a defendant. Mr. Winzer was not sued individually. PepsiCo moved to dismiss based on limitations, and the trial court granted PepsiCo's motion and struck the amended complaint. Mr. Winzer was employed by FedEx at the time of trial.

[2] Giant asked:

    I.    Whether the circuit court erred in denying Giant's motion for judgment whereby permitting [Ms.] Webb to argue a new, alternative theory of liability at the close of trial?

    II.    Whether the circuit court erred in denying Giant's motion for summary judgment?

    III.    Whether the circuit court erred in denying Giant's motion in limine to exclude argument that Giant owed [Ms.] Webb a non-delegable duty of "safety" when such argument misstated the law, was irrelevant, and was wholly prejudicial?

    IV.    Whether the circuit court erred in charging the jury with a spoliation instruction when there was no evidence or findings that video footage of the incident existed or was destroyed?

I. Did the circuit court err in denying Giant's motion for summary judgment prior to trial and its subsequent motion for judgment?

II. Did the circuit court err in denying Giant's motion in limine to exclude argument that Giant owed Ms. Webb a non-delegable duty of "safety"?

III. Did the circuit court err or abuse its discretion in giving a spoliation instruction?

For the reasons set forth herein, we shall reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Incident*

Ms. Webb's injury occurred in the frozen-foods aisle at Giant. She testified:

> I turned around and to put the stuff in my – in the basket and I stepped back and I was struck in the back. And I fell backwards, struck my back and my buttocks which we have pictures to show the bruising that I did hit something and I fell to the ground. And I assume it was a Pepsi person that was pushing the cart.[3]

Ms. Webb's prior medical history indicated prior incidents of dizziness and falling. Giant's incident report and some medical records suggest that she had reported being dizzy and falling when the incident occurred.

Keydonne Winzer, the person "pushing the cart," denied striking Ms. Webb. He testified:

> Okay. . . . We have those wooden pallets that we have our crates and things on and I was pulling it to the back of the store. As I'm going down the aisle, I recognize that there's a lady who is knelt down in front of one of the

---

[3] The terms "pallet cart" and "pallet jack," were used interchangeably in this case. They are also known as pallet trucks, pallet pumps, pump trucks, scooters, dogs, or jiggers and used to lift and move pallets. In her Complaint, Ms. Webb alleged that she was struck by a "store pallet cart."

2

freezer doors. So generally I told her – well, normally when I do the pallets, I'll let the customers know, hey, I'm behind you or I'm on the aisle.

So I said, "Hey I'm behind you." I don't think she really heard me because she stood up, it seems that she lost her balance and when she stumbled backwards, she hit the edge of the pallet and then hit the floor.

As to his employer, he testified:

[Giant's Counsel]: Okay. You received all your training from Pepsi?

[Mr. Winzer]: Yes.

[Giant's Counsel]: Did you ever receive training from Giant?

[Mr. Winzer]: No.

[Giant's Counsel]: Did you ever receive any type of payment directly from Giant?

[Mr. Winzer]: No.

[Giant's Counsel]: Were you ever an employee of Giant?

[Mr. Winzer]: No.

[Giant's Counsel]: You were always an employee of Pepsi?

[Mr. Winzer]: Yes.

\* \* \*

[Giant's Counsel]: Now, your purpose while you were at the Giant that day was to make sure Pepsi product was stocked, correct?

[Mr. Winzer]: Yes.

[Giant's Counsel]: Okay. Did anybody from Giant ever tell you how to stock Pepsi products?

[Mr. Winzer]: No.

\* \* \*

3

[Giant's Counsel]: In your experience as a merchandiser, were you ever followed by any store employee to watch – so they'd watch you do your job?

[Mr. Winzer]: No.

[Giant's Counsel]: Because they're doing their job, right?

[Mr. Winzer]: Right. Sometimes afterwards, that's – that would be to check to see if I did the job the correctly.

[Giant's Counsel]: If it's stocked properly?

[Mr. Winzer]: Right.

* * *

[Giant's Counsel]: [Giant] did not hire or fire you?

[Mr. Winzer]: No.

[Giant's Counsel]: It did not control your conduct while you were in the store, is that correct?

[Mr. Winzer]: No.

## Motion for Summary Judgment

On September 14, 2018, Giant moved for summary judgment:

> For the purpose of this motion, and for the resolution of the claims against Giant, while there are disputed facts regarding the manner in which the occurrence happened, *it is undisputed that the alleged tortfeasor was not an employee of Giant.* Because the person that may have struck the Plaintiff was not an employee or agent of Giant, Giant cannot be vicariously responsible for that person's alleged negligence. Additionally, there cannot be a cause of action for negligent hiring, supervision, or retention. Plaintiff's claims all fail as a matter of law, and Giant is entitled to judgment in its favor.

Ms. Webb, in opposition to the motion, stated:

4

The man was not wearing any type of uniform and did not identify himself to Ms. Webb and as a result [she] was not aware whether he was an employee of Giant. *Exhibit A* at 31-3 through 17. However, [she] assumed that the man that struck her was an employee of Giant.

\* \* \*

Mr. Winzer has testified that Defendant Giant's pallet jacks were known and understood to be available for his use and that of other such third-party vendors with the express permission and consent of Defendant Giant. . . . Mr. Coradini [Giant's corporate representative] also explained that Defendant Giant would direct vendors on such matters as where to place items and displays and "correct" them where a safety issue was observed.

\* \* \*

The Motion for Summary Judgment must be denied because Giant is vicariously liable for the subject incident which caused Ms. Webb's injuries and also because there remain genuine disputes of material fact as to the identity of the individual who struck Ms. Webb with the pallet jack.

(Emphasis added).

The circuit court denied the motion without a hearing.

**Motion in Limine**

On April 3, 2019, Giant filed an Omnibus Motion in Limine to preclude Ms.

Webb from arguing that Giant had "breached a 'safety' duty as a property owner" under a

"Reptile Theory"[4] approach by "appeal[ing] to the jury's own interests and/or passions

---

[4] Giant argues that the "Reptile Theory" is a "recent phenomenon, which traces its origins to a monograph authored by Don C. Kennan and David Ball, *Reptile: The 2009 Manual of the Plaintiff's Revolution.*" According to Giant:

> The Reptile theory asserts that you can prevail at trial by speaking to, and scaring, the primitive part of jurors' brains, the part of the brain they share with reptiles. The Reptile strategy purports to provide a blueprint to succeeding at trial by applying advanced neuroscientific techniques to

and ask[ing] them to place themselves in the proverbial shoes of the plaintiff when deciding what the defendant should have done." In addition, the motion in limine sought to preclude any evidence or testimony that Mr. Winzer "was an employee, agent, or servant of Giant," because it was now undisputed "that the person pushing the cart was an employee of PepsiCo."

Ms. Webb responded that "[t]here is a genuine dispute of material fact as to the identity of the employee who caused [her] injuries," and that "she does not know whether the man who struck her was employed by Defendant Giant." In addition, she argued that "Giant, as the property owner of a business open to the public, owe[d] a duty to 'use reasonable care to see that those portions of the property that the invitee may be expected to use are safe.'" Characterizing Giant's duty as "non-delegable under Maryland law," she argued that "the duty of care owned to Ms. Webb" was breached when it "permitted Mr. Winzer . . . to utilize a pallet jack it owned with its permission and consent, in its store aisles, at the same time they were to be open to customers (invitees), without proper oversight or supervision."

---

(…continued)
> pretrial discovery and trial. The fundamental concept is that the reptile brain is conditioned to favor safety and survival. Therefore, if plaintiffs' counsel can reach the reptilian portion of the jurors' brains, they can influence their decisions; the jurors will instinctively choose to protect their families and community from danger through their verdict.

Appellant's Brief at 2-3 (citing *Plaintiff's bar embraces Reptile strategy and defense bar responds*, LEXOLOGY (Oct. 4, 2013), https://www.lexology.com/library/detail.aspx?g=ad754e6a-c50c-4570-8990-71900cdf6795.

When the parties appeared for the first day of trial, the court, after argument, denied the motion:

> [W]ith regards to Mr. Win[ze]r as [to] whether he's an employee, agent, servant of Giant, again, these are, I think, you are asking me again to kind of make a ruling without having the evidence. I think this is the facts that are going to be at issue, and I will address this at the conclusion of the case, so I decline to rule on a Motion in Limine at this point. – *whether Giant breached a safety duty as the property owner, again, I'm going to instruct the jurors on the law. If they start to argue a higher duty and it's not supported by my instructions, that's going to be an area that they're going to have a problem with in closing arguments.* They're going to get the instructions from me, you know. That will be fair fodder for your closing, you know.
>
> So at this point I'm going to deny your motions with regards to that.

(Emphasis added).

### *Motion for Judgment*

At the close of Ms. Webb's case-in-chief, Giant moved for judgment on two grounds: (1) that there was no evidence of an unreasonably dangerous condition on the premises to support a claim that Giant breached a non-delegable duty to keep its premises safe; and (2) that there was no evidence that Mr. Winzer was an agent, servant, or employee of Giant sufficient to support a claim for vicarious liability or negligent hiring, supervision, training, or retention.

Ms. Webb's counsel responded:

> The property owner here, which is undisputed, Giant, has a non-delegable duty . . . which he is not free to delegate to the contractor. Such a non-delegable duty requires the person upon who it is imposed to answer for that care as exercised by anyone even though he be an independent contractor to whom the performance of the duty is entrusted. . . .

7

[E]mployers are liable under this exception[5] irrespective of whether they themselves have been at fault. Whether vicarious liability should be imposed upon an employer by application of this exception is a matter of policy.

\* \* \*

That's exactly what we have here and with respect to these questions regarding notice, whether knows or should have known, there was testimony from both the Giant rep and from Mr. Winzer that they know – first of all, it's a store owned by Giant and it's a pallet jack owned by Giant with their permission and consent stocking shelves for their benefit. And the duty is to use reasonable care to see that those portions of the property that the invitee may be expected to use are safe.

The trial court granted judgment in favor of Giant on premises liability, but permitted the case to go forward based on vicarious liability:

I evaluated the evidence of this case and . . . looked at the case law that was cited and *what I believe we have before us is not a premise liability case. I do not believe that there is any allegation that what occurred is a result of a flaw or evidence in the record to say that there was something about those premises that created a danger that would have resulted in the injury.* . . . So I do not believe that the – there is evidence to go forward on premise liability to the jury.

However, what, I think this case is and what the evidence is, I mean, it's a – is whether Mr. Winzer was – did something that was negligent that resulted in the injury that was caused to Ms. Webb. So I think the issue becomes, is there evidence to keep this case alive against Giant with regards to Mr. Winzer's actions that day. *I think that there is arguments that could be made on what was offered, that there is some – enough involvement with Giant with regards to Mr. Winzer to warrant it turning into a fact question for the jury to decide.* I think there was enough evidence for the jury to figure out a, you know, a – whether – you know, *I'm going to leave it up to Counsel to make their arguments that there isn't*

---

[5] Counsel referred to the exception to the general rule that an "employer of an independent contractor is not liable for the negligence of the contractor or his employees." *Appiah v. Hall*, 416 Md. 533, 558 (2010) (quoting *Rowley v. Balt.*, 305 Md. 456, 461 (1986)).

*enough, but I think there was evidence to – that Giant controlled access to the store*.

(Emphasis added).

At the close of its case, Giant renewed the motion for judgment, which the trial court again denied. The jury awarded Ms. Webb $188,986 in past medical bills and $211,014 in non-economic damages.

Other facts will be presented in our discussion of the questions.

## DISCUSSION

## I

## The Denial of Giant's Motion for Summary Judgment and Motions for Judgment

The motions for summary judgment and for judgment present similar questions at different stages of the proceedings. We will first address the Motion for Summary Judgment.

<u>Summary Judgment</u>

*Standard of Review*

A trial court has "discretionary authority to *deny* a motion for summary judgment in favor of a full hearing on the merits, even when the moving party 'has met the technical requirements of summary judgment.'" *Fischbach v. Fischbach*, 187 Md. App. 61, 75 (2009) (quoting *Dashiell v. Meeks*, 396 Md. 149, 164–65 (2006)). Accordingly, we review a denial of a motion for summary judgment for an abuse of discretion. *Id.*

*Contentions*

Giant contends that Ms. Webb had "failed to offer any disputes of fact or evidence that Mr. Winzer was an agent, servant, or employee of Giant," and to "present any evidence that an unreasonably dangerous condition existed on the premises to sustain a cause of action predicated on premises liability."[6]

Ms. Webb contends that the denial of summary judgment was proper. She argues there was a genuine dispute of material fact regarding Mr. Winzer's relationship with Giant,[7] and sufficient facts to demonstrate Giant's control over Mr. Winzer when he was on the premises.

*Analysis*

A trial court can "enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law," but it may also exercise its discretion not to do so. *Fischbach*, 187 Md. App. at 75

---

[6] The trial court later granted Giant's motion for judgment on the issue of premises liability. Giant argues that by the end of discovery, Ms. Webb lacked any evidence that the person pushing the pallet cart was an agent, servant, or employee of Giant or that Mr. Winzer's use of Giant's pallet cart "equated to an entrustment of a non-delegable duty or was itself "unreasonably dangerous." We understand Giant's argument to be that the evidence did not change between summary judgment and trial and that it was entitled to judgment prior to trial.

[7] In her opposition to Giant's motion for summary judgment, Ms. Webb also contended that there was a genuine dispute of material fact as to the identity of the employee who caused her injuries. Mr. Winzer's identity and his relationship with PepsiCo was not disputed at trial. As we noted above, Ms. Webb sought to join PepsiCo as a defendant on December 22, 2017. PepsiCo moved to dismiss based on limitations, and the trial court granted PepsiCo's motion and struck the amended complaint.

10

(quoting Md. Rule 2-501(f)); *see Dashiell v. Meeks*, 396 Md. 149 (2006). The denial of a technically sufficient motion for summary judgment "in favor of a full hearing on the merits" does not necessarily constitute an abuse of discretion, and we are not persuaded that it did in this case. *See Fischbach*, 187 Md. App. at 75.

<u>Motion for Judgment.</u>

*Standard of Review*

When we review a trial court's ruling on a motion for judgment, we ask:

> whether on the evidence adduced, viewed in the light most favorable to the non-moving party, any reasonable trier of fact could find the elements of the tort by a preponderance of the evidence. . . . If there is even a slight amount of evidence that would support a finding by the trier of fact in favor of the plaintiff, the motion for judgment should be denied.

*Washington Metro. Area Transit Auth. v. Djan*, 187 Md. App. 487, 491-92 (2009).

*Contentions*

Giant contends that Ms. Webb's "own admission and representations" indicate that "her sole theory of liability in this case was based on premises liability, *i.e.* that Giant breached a duty to one of its customers related to an unreasonably dangerous condition on its premises." And, more particularly, that "[her] theory of liability was that the operation of a pallet cart by Mr. Winzer during store hours created an unreasonably dangerous condition" for which Giant was vicariously liable based on the breach of a non-delegable duty. According to Giant, Ms. Webb did not plead or advance a theory of negligence "based on vicarious liability, until the [c]ourt granted the motion for judgment on the premises liability claims." But even assuming that vicarious liability "was one of [Ms. Webb's] theories of negligence," there was "insufficient evidence to support the

11

existence of an employment relationship between Giant and Mr. Winzer and therefore no grounds for Giant to be vicariously liable for Mr. Winzer's actions."

Ms. Webb contends that by pleading negligence, she had "pursued a vicarious liability theory from the time of the filing of her Complaint," and that Giant's liability was always based "on the theory that [Giant was] vicariously liable for Mr. Winzer's actions due to the control and authority exerted over Mr. Winzer while he was working on [Giant's] premises."[8] Pointing to the testimony of Mr. Coradini, Giant's corporate designee,[9] she asserts that Giant "controlled not only Mr. Winzer's access to [its] store, but also [his] behavior while within the store."

*Analysis*

The duty of care owed by an owner or occupier of land to someone entering on the property depends on whether the person "is an invitee, a licensee, or trespasser." *Rowley v. Balt*, 305 Md. 456, 464 (1986). An "invitee" is "a person invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business." *Id.* at 465. Without question, Ms. Webb was an invitee to whom Giant owed a duty of "reasonable and ordinary care to keep [the] premises safe for [her] and to protect [her] from injury caused by an unreasonable risk which [she], by exercising ordinary care for [her] own safety will not discover." *Id.* (citations omitted).

---

[8] The Complaint indicates that Giant's liability for Mr. Winzer's actions was based originally on his status as a Giant employee.

[9] Mr. Coradini, testified: "if they're using a power jack, they . . . try to use a power jack, and they're told not to. We can kick them out of the store if they're abusing or not doing something properly."

As the Court of Appeals further explained in *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 263 (2003), citing Restatement (Second) of Torts § 343:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, *but only if, he*

(a) *knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and*

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.[10]

(Emphasis added).

But the owner or possessor of land is not "an insurer of the safety of his customers while they are on the premises and no presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store." *Myers v. TGI Friday's, Inc.*, No. CIV. JFM 07-333, 2007 WL 4097498, at *4 (D. Md. Nov. 9, 2007) (quoting *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 230 (1965)).

Mr. Winzer was employed by PepsiCo to deliver and stock PepsiCo products at the Giant store, which he was doing when Ms. Webb was injured. As a general rule,

---

[10] For example, "an employee of a business has a legal duty to take affirmative action" to protect a business invitee who is in danger, "*provided that the employee has knowledge of the injured invitee and the employee is not in the path of danger*." *Southland Corp. v. Griffith*, 332 Md. 704, 719 (1993) (emphasis added). And there is a duty to protect an invitee from harm caused by the intentional acts of a third party when it is known or should be known that the acts are occurring or about to occur. *Corinaldi v. Columbia Courtyard, Inc.*, 162 Md. App. 207, *cert. granted*, 388 Md. 404, *appeal dismissed*, 389 Md. 124 (2005).

Giant would not be liable for the negligence of a PepsiCo employee. As the Court of

Appeals has explained:

> This common law principle is embodied in § 409 of the Restatement, which provides that, with some exceptions, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Although the exceptions to this rule are numerous, Comment b to § 409 of the Restatement explains that they generally "fall into three very broad categories: 1. Negligence of the employer in selecting, instructing, or supervising the contractor[;] 2. Non-delegable[11] duties of the employer, arising out of some relation toward the public or the particular plaintiff[; and] 3. Work which is specially, peculiarly, or 'inherently' dangerous." Under these exceptions, liability is imposed on the employer of an independent contractor under one of two theories: vicarious liability or "actual fault on the part of an employer." *Rowley*, 305 Md. at 462, 505 A.2d at 497; Restatement §§ 410–415 introductory n. (discussing liability for harm caused by employers of independent contractors).
>
> *         *         *
>
> [A]n employer is not liable for harm caused by the work of an employee so long as "the employee is 'a contractor, pursuing an independent employment, and, by the terms of the contract, is free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work, exclusive of the control and direction, in this respect, of the party for whom the work is being done.'" *Gallagher's Estate v. Battle*, 209 Md. 592, 601 (1956) (quoting *Deford v. State ex rel. Keyser*, 30 Md. 179, 203 (1869)). When an employer has retained control of the details of the work, however, liability is permitted under a theory of actual fault. *See Gallagher's Estate*, 209 Md. at 601 (explaining that an employer's liability under *respondeat superior* is predicated on the rationale that the employer's control over the employee's work renders the employer constructively present during the work, "so that the negligence of the servant is the negligence of the master"); Restatement §§ 410–429

---

[11] The *Rowley* Court stated that referring to the duty owed to an invitee as "non-delegable" was "something of a misnomer" in that the duty of performance can be delegated but not "the risk of non-performance of the duty." 305 Md. at 466. There is no evidence of delegation in this case.

14

introductory n. (referring to actual fault as the basis for imposing liability on employers under the retention of control doctrine set forth in § 414)[12] . . . . As this passage from the Restatement implies, and we have repeated throughout, the retention of control is an absolute prerequisite to an employer's liability for harm caused by the work of an independent contractor.

*Appiah v. Hall*, 416 Md. 533, 551, 562-63 (2010).

In denying the premises liability claim, the trial court did not find "enough evidence in the record to say that there was something about those premises that created a danger that would have resulted in the injury," which would include the use of pallet jacks during store hours.[13] The court also granted Giant judgment on the count related to negligent hiring, training, and "supervision of its employees/agents." But, referencing Giant's control over Mr. Winzer's access to the store, the court found that there was sufficient evidence to "keep the case alive" against Giant.

---

[12] Comment c. to § 414 of Restatement (Second) of Torts provides:

> It is not enough that [the employee] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

[13] As a result, the jury was not "to decide a premises liability case." The instructions and the verdict sheet question affirmatively answered by the jury regarding negligence related to Mr. Winzer's negligence and whether he was an "agent, servant or employee" of Giant based on its control of his work. The jury did not answer whether Mr. Winzer "was an independent contractor and that his acts were authorized or intended by Giant."

15

Arguing in support of that finding, Ms. Webb advances the following as evidence of the requisite control over Mr. Winzer's work:

 (1) Mr. Winzer checked in with a Giant employee when he arrived at the store, and checked out when he left;

(2) Mr. Winzer used equipment owned by Giant, which had regulations on the type of equipment he could use when fulfilling his tasks in the store;[14]

(3) Citing Giant's corporate designee's testimony, Ms. Webb states that Giant controlled "Mr. Winzer's behavior while within the store": "[W]e can kick them out of the store if they were abusing or not doing something properly."

But "*[g]eneral control over an independent contractor's work*" would not be sufficient to extend liability to Giant for Mr. Winzer's actions. *See Appiah*, 416 Md. at 563 (emphasis added). To do that, it would be necessary to demonstrate that Giant had "retained control over the operative detail and methods" of Mr. Winzer's work, including "*the very thing from which the injury arose.*" *Id.* at 555 (citing *Gallagher's Estate*, 209 Md. at 602). To the extent that Ms. Webb's injury "arose" out of Mr. Winzer's use of an unpowered pallet jack in his work, Giant's control extended only to a prohibition against the use of powered jacks by any vendor.

---

[14] Ms. Webb argues that some stores do not allow pallet jacks during regular business hours but what Mr. Winzer testified to was that some stores do not permit *powered* pallet jacks on the floor during certain hours. Giant is one of those stores. The record does not indicate any prior issues having arisen from the use of non-powered pallet jacks by Mr. Winzer or the employees of any other vendors who did not have their own. Because powered jacks were not permitted, Giant provided non-powered jacks for the vendors to use.

16

In sum, correcting a vendor *observed* using a pallet jack improperly, requiring a vendor to check in and out, to stock in a particular location of the store, permitting only non-powered jacks, and "sometimes" checking the vendor's work—do not indicate sufficient control over the "methods" and "operative detail" of Mr. Winzer's work to extend liability on Giant for his actions. *See Appiah*, 416 Md. at 565. Rather than a right to supervise Mr. Winzer's work, these are general rights that a possessor of the premises on which the work is being done would ordinarily retain for itself. For this reason, we hold, as a matter of law, that the evidence was insufficient to submit the vicarious liability claim to the jury, and that Giant's motion for judgment should have been granted.

## II.

### The Denial of Giant's Motion in Limine

*Standard of Review*

Evidentiary rulings are "left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion." *Ayala v. Lee*, 215 Md. App. 457, 474–75 (2013) (quoting *Malik v. State*, 152 Md. App. 305, 324 (2003)). An abuse of discretion is when "no reasonable person would take the view adopted by the [trial] court," or when "the court acts without reference to any guiding rules or principles." *Powell v. Breslin*, 430 Md. 52, 62 (2013) (internal quotation marks and citation omitted).

*Contentions*

Giant contends that, by denying the motion in limine, the court "improperly allowed [Ms.] Webb's counsel to interject 'Reptile Arguments' into trial." More

17

specifically, it argues that her argument that Giant had a duty to keep her safe was "not an accurate summation of the law in any way." In its view, this error was especially prejudicial in light of the trial court's determination that "there was insufficient evidence of a dangerous condition to support a theory of negligence predicated on premises liability," which meant that there was no breach of a "non-delegable duty." Giant asserts that, by denying the motion, the court "openly invited" the jury "to look beyond the law, put themselves in the place of [Ms.] Webb, and punish a corporate defendant regardless of fault."

Ms. Webb contends that Giant's arguments were not preserved for our review because Giant never objected to any arguments that she made. In addition, she contends that they are "entirely without merit," because "at no point" did she ask the jury to "put themselves in her shoes."

*Analysis*

A Reptile Theory approach is similar to a Golden Rule argument. It encourages jurors to favor personal safety and the protection of family and community; Golden Rule arguments "appeal[] to the jury's own interests" and ask jurors "to place themselves in the shoes of the victim." *Lee v. State*, 405 Md. 148, 171 (2008) (internal citations omitted). When such arguments "invite[] the jurors to disregard their oaths and to become non-objective viewers of the evidence which has been presented to them, or to go

18

outside that evidence to bring to bear on the issue of damages purely subjective considerations" they are improper.[15] *Leach v. Metzger*, 241 Md. 533, 536-37 (1966).

Here, some comments by Ms. Webb's counsel in both opening and closing statements might be understood as encouraging the jurors to make Giant an insurer of its customers' safety while on its premises.[16] But they were not objected to. Instead, Giant responded in its closing:

> I feel that there is complete disregard for the actual facts and evidence that you've heard . . . when I listened to [what Ms. Webb's counsel] said, your job is to assess community safety standards. For about 20 minutes, [the trial court] delivered the law. She delivered the instructions that you are to consider. And nowhere in those instructions are we charging you to be the guardians of the public safety. Nowhere.

An objection to an improper argument must be "interposed either (1) immediately after the allegedly improper comments are made, or (2) immediately after the argument is completed." *Grier v. State*, 116 Md. App. 534, 545 (1997). And, in its ruling on the motion in limine, the trial court essentially invited an objection if Ms. Webb argued for "a higher duty . . . not supported by the instructions."

In short, the issue was not adequately preserved for our review.

---

[15] Prior to submitting the case to the jury, the trial court instructed the jurors to base their findings only upon the testimony, exhibits, and stipulations of the parties, "including any conclusions which may be fairly drawn from that evidence." And that "[o]pening statements and arguments of the lawyers are not evidence in this case."

[16] As noted above, the case went to the jury based on Mr. Winzer's negligence. Because neither Mr. Winzer nor PepsiCo could be held liable for his negligence, recovery was dependent on the extension of liability to Giant beyond its duty to Ms. Webb as an invitee.

19

## III.

## Spoliation

*Standard of Review*

In deciding whether to grant a requested jury instruction, a trial court must consider "whether the requested instruction was a correct exposition of the law, whether that law was applicable in light of the evidence before the jury, and finally whether the substance of the requested instruction was fairly covered by the instruction actually given." *Malik v. Tommy's Auto Serv., Inc.*, 199 Md. App. 610, 616 (2011) (citation omitted). We review the grant or denial of an instruction for an abuse of discretion. *Steamfitters Local Union No. 602 v. Erie Ins. Exchange*, 231 Md. App. 94, 124 (2019) (citing *S & S Oil, Inc. v. Jackson*, 428 Md. 621, 640 (2012)).

*Contentions*

Giant contends that the trial court abused its discretion in giving the jury a spoliation instruction that was "based on pure speculation that: 1) video footage of the incident existed; and 2) the alleged footage was destroyed."

Ms. Webb contends that Giant's "actions clearly demonstrate the propriety of the spoliation instruction given to the jury." She points to Mr. Coradini's statement that Giant has "probably upwards of 30-some cameras" positioned "throughout the entire store" that were "in place at the time of the incident in question," and argues that Mr. Coradini's testimony "both in his deposition and at trial, provided far more evidence regarding the existence of camera footage of the subject area at the time of the incident at issue than [Giant] references either in [its] motion or [its] brief."

20

*Analysis*

Mr. Coradini was asked in a discovery deposition if there was video footage of the incident, to which he responded: "I don't know." Giant's counsel, referring to Giant's earlier response to a document request, then stated on the deposition record that there was no video footage of the incident.

At trial, Mr. Coradini testified that, after his deposition, he personally contacted MAC Risk Management to determine whether there was any video footage of the incident, and was notified, consistent with Giant's response to the earlier document request and his deposition response that "[n]o video of that incident was captured."[17]

When she first submitted proposed jury instructions, Ms. Webb requested an instruction on spoliation. In response, Giant asked that the trial court deny the instruction request and preclude her from inferring or arguing that video surveillance of the incident had been destroyed. The court deferred ruling on the spoliation instruction at that time.

Later, when Ms. Webb's counsel again requested a spoliation instruction, Giant's counsel stated:

> [T]his whole notion of spo[li]ation is based on nothing but rank speculation and there's no foundation that there was any video to be preserv[ed] or that there was any destruction of evidence. To allow [Ms. Webb's counsel] to ask questions to engage in speculation – just engages in

---

[17] On cross-examination, the following exchange ensued:

[Ms. Webb's counsel]: Why did you say at the deposition that you didn't know whether video existed or not?

[Mr. Coradini]: Because I, like I said, the research was done. . . . you didn't ask if I physically did the research.

21

speculation, there's just no evidence for it to be – and all it would do is serve to prejudice my client to ask questions about something without any foundation that would require the jury at the end of the case to engage in nothing but speculation.

The court granted Ms. Webb's request and, using Maryland Civil Pattern Jury Instruction (MPJI-Cv) 1:16, instructed the jury:

> The destruction of or the failure to preserve evidence by a party may give rise to an inference unfavorable to that party. If you find that the intent was to conceal the evidence, the destruction or failure to preserve must be inferred to indicate that the party believes that his or her case is weak and that he or she would not prevail if the evidence was preserved. If you find that the destruction or failure to preserve the evidence was negligent, you may, but are not required to, infer that the evidence, if preserved, would have been unfavorable to that party.

Spoliation is "[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usu[ally] a document." *Keyes v. Lerman*, 191 Md. App. 533, 537 (2010) (quoting Black's Law Dict., 8th Ed. (2004) at 1437). A spoliation instruction is given in a civil case when "a party has destroyed or failed to produce evidence." *Cost v. State*, 417 Md. 360, 370 (2010). The instruction addresses:

> the destruction or failure to preserve evidence, rendering it unavailable, and not merely the failure to produce evidence that *is* available, or, indeed, the failure to create evidence, but, for purposes of the permissible inference, it does distinguish between destruction or failure to preserve with an intent to conceal the evidence and destruction or failure to preserve that is the product of negligence.

*Keyes*, 191 Md. App. at 540.

But before the instruction was given, Ms. Webb, "[b]y necessity," had the burden to establish and the court would have to find that the video "actually existed." *Solesky v. Tracey*, 198 Md. App. 292, 309 (2011). There can be no act of destruction or failure to

22

preserve evidence not proven to exist, and therefore no act or omission from which inferences can arise.

According to the document request response and Mr. Coradini's deposition and trial testimony, "no video of the area where the fall occurred was found." In other words, there is no direct evidence that a video of the incident actually existed or that it was destroyed or otherwise not preserved.

Ms. Webb offers the following circumstantial evidence to establish its existence: (1) the number of cameras positioned throughout the store pointing in "every direction" including "around the frozen food section";[18] (2) the store report created on the day of the incident; and (3) her demand to MAC Risk Management on December 16, 2014 to preserve and not destroy the video of the incident.

On this record, the number of cameras in the store, including cameras or a camera "around" the frozen food aisle, do not support a factual finding that a video of the incident "actually existed." Nor do the store report and the demand to MAC Risk Management support the likelihood of its existence. To borrow from MPJI-Cv 1.8, which was given in this case, the cameras are, at most, deer tracks in the snow, but they are not necessarily tracks of a particular deer—in this case, a video of the incident. Depending on operability and direction, they may support the video's *possible* existence, but not its actual existence.

---

[18] When Mr. Coradini testified, he said that there were "roughly, give or take" 30 cameras in the store, which was an estimation of the screens seen in the "loss prevention room," but that he did not have access to the "actual angles they're facing."

The failure of the multiple cameras to capture the incident could be grist for credibility and argument mills, but it would not justify a spoliation instruction. Instructions "as to facts and inferences" are not normally required. And when missing evidence permits multiple inferences to be drawn, a trial judge's "emphasis of one possible inference out of all the rest . . . can be devastatingly influential upon a jury although unintentionally so." *Keyes*, 191 Md. App. at 542 (quoting *Yuen v. State*, 43 Md. App. 109, 114 (1979)). That said, we do not reverse a trial court's decision on a jury instruction in the absence of prejudicial harm. *Barksdale v. Wilkowsky*, 419 Md. 649, 669 (2011) (holding that "a party challenging an erroneous jury instruction in a civil case must demonstrate to the court why the error was prejudicial").

Giant argues that it was prejudiced because the instruction "permitted [Ms.] Webb's counsel to lead the jury away from the actual evidence presented in this case," and that "[t]he only purpose for [Ms.] Webb to even reference spoliation was to unfairly prejudice the jury." Ms. Webb responds that Giant suffered "no harm" from the instruction because its language gave "the jury the opportunity to weigh the evidence and reach their own conclusions."[19]

Here, the only witnesses to the incident were Ms. Webb and Mr. Winzer, which made their respective credibility an issue. In closing, Ms. Webb's counsel directed the jury's attention to the instruction: "I really want you to pay close attention to [the

---

[19] The language of the instruction presumes the existence of the evidence and its destruction or the failure to preserve it. The permitted conclusions relate to the intent to conceal and the required or permitted inferences.

spoliation instruction] that the judge gives you" and then read the instruction to the jury. He then asked the jury if they "really believe that there's no video footage of the incident" and asserted "[t]here's almost always video footage" and if there was, it "would probably corroborate and be consistent with Ms. Webb's description" of what happened.

An instruction that "is misleading or distracting for the jury, and permits the jury members to speculate about inapplicable legal principles," is potentially prejudicial. *Barksdale*, 419 Md. at 669. Here, the jury was invited and permitted by the instruction, to engage in speculation regarding concealment, destruction, and failure to preserve evidence that was not shown to actually exist. According to the Court of Appeals, "the mere inability of a reviewing court to rule out prejudice, given the facts of the case, may be enough to declare an error reversible." *Barksdale*, 419 Md. at 669. Prejudice cannot be ruled out in this case. Had we not already reversed the judgment based on vicarious liability, we would also reverse the judgment based on the spoliation instruction and remand to the circuit court for a new trial.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED; CASE REMANDED TO THE CIRCUIT COURT TO ENTER JUDGMENT IN FAVOR OF GIANT; COSTS TO BE PAID BY APPELLEE.**

25