*Karen Webb v. Giant of Maryland, LLC*, No. 12, September Term, 2021.  Opinion by Harrell, J.

**APPEAL AND ERROR – REVIEW – SCOPE AND EXTENT OF REVIEW – JUDGMENT IN GENERAL – IN GENERAL**

Court of Special Appeals correctly applied a *de novo* standard when reviewing circuit court's denial of a motion for judgment filed by Respondent at the close of evidence.  In reviewing the circuit court's decision, the Court conducted the same analysis as the circuit court and reviewed the evidence in a light most favorable to Petitioner (the non-moving party).  Based on that review, which the Court conducted without deference to the circuit court, the Court held that the evidence was insufficient to submit Petitioner's negligence claim to the jury and that, as a result, Respondent was entitled to judgment as a matter of law.  The Court's analysis was sound and consistent with established precedent.

**LABOR AND EMPLOYMENT – RIGHTS AND LIABILITIES AS TO THIRD PARTIES – WORK OF INDEPENDENT CONTRACTOR – IN GENERAL**

Court of Special Appeals did not err in reversing circuit court's denial of Respondent's motion for judgment.  The evidence, even when viewed in a light most favorable to Petitioner, did not permit an inference that Respondent retained sufficient control over the work of the independent contractor who caused Petitioner's injuries.  The evidence established that Respondent had only a general control over the contractor's work, which was insufficient to establish Respondent's liability.  Moreover, any control Respondent may have had over the contractor's work did not extend to the very thing from which Petitioner's injuries arose.

**TRIAL – INSTRUCTIONS TO JURY – NECESSITY AND SUBJECT MATTER – FAILURE OF A PARTY TO TESTIFY OR TO CALL WITNESS OR PRODUCE EVIDENCE**

**APPEAL AND ERROR – HARMLESS AND REVERSIBLE ERROR – PARTICULAR ERRORS – INSTRUCTIONS – IN GENERAL**

Court of Special Appeals did not err in holding that the circuit court's spoliation instruction was improper and prejudicial.  The Court properly reviewed the circuit court's decision to give the instruction for abuse of discretion.  The Court then correctly determined that the instruction was not applicable under the facts of the case given that there was no indication that the evidence at issue – a video recording of the incident that caused Petitioner's injuries – had ever existed.  The Court likewise did not err in holding that the instruction was prejudicial.  Not only was the instruction misleading, but it required the jury to speculate about the applicability of a legal principle, *i.e.*, the inference to be drawn from the destruction or concealment of evidence, regarding evidence that was never shown to exist in the first place.

IN THE COURT OF APPEALS

OF MARYLAND

No. 12

September Term, 2021

_____

KAREN WEBB

v.

GIANT OF MARYLAND, LLC

_____

Getty, C.J.,
McDonald,
Watts,
Hotten,
Booth,
Biran,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Harrell, J.

_____

Filed: December 21, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Petitioner, Karen Webb, was injured while shopping at a supermarket owned and operated by Giant of Maryland, LLC, Respondent ("Giant"). Petitioner filed suit against Giant in the Circuit Court for Anne Arundel County alleging negligence and negligent hiring, training, and supervision. A jury returned a verdict in Petitioner's favor. Giant noted an appeal to the Court of Special Appeals. That Court, in a reported opinion, reversed the circuit court's judgment. The intermediate appellate court held that the circuit court erred in denying a motion for judgment made by Giant at the close of evidence and that the circuit court erred in giving a jury instruction on spoliation. *Giant of Maryland, LLC v. Webb*, 249 Md. App. 545 (2021). Petitioner sought certiorari review by this Court. We granted a writ, *Webb v. Giant of Maryland, LLC*, 474 Md. 633 (2021), to consider the following questions, which we have rephrased for clarity:

1. Did the Court of Special Appeals apply the correct standard of review when reviewing the circuit court's denial of Giant's motion for judgment?

2. Did the Court of Special Appeals err in reversing the circuit court's judgment on the grounds that the circuit court had erroneously denied Giant's motion for judgment?

3. Did the Court of Special Appeals, in reviewing the circuit court's decision to instruct the jury on spoliation, fail to address whether the circuit court's decision was an abuse of discretion and then err in holding that the instruction was prejudicial?

For reasons to be explained, we shall affirm the judgment of the Court of Special Appeals.

## BACKGROUND

On 4 December 2014, Petitioner was injured while shopping in the frozen-foods section of a Giant supermarket. The injury occurred when Petitioner came in contact with a non-motorized pallet jack that was being operated by Keydonne Winzer, a PepsiCo

("Pepsi") employee. At the time, Winzer, acting as a deliveryman for Pepsi, was using the pallet jack to transport pallets of Pepsi products through the store to re-stock shelves. According to Petitioner, the pallet jack struck her in the back, which caused her to fall to the ground and become injured. It is now undisputed that, at the time of the incident, Winzer was an employee of Pepsi, not Giant.

Petitioner sued Giant for negligence and negligent hiring, training, and supervision.[1] Petitioner claimed, among other things, that Giant was liable vicariously for Winzer's actions.

### Motion for Summary Judgment

Prior to trial, Giant filed a motion for summary judgment, arguing that Giant could not be held liable for the actions of Winzer. Petitioner responded that, even if Winzer was not a Giant employee, Giant nevertheless controlled many aspects of his work, including his use of the pallet jack and, thus, was liable for his actions. The circuit court denied Giant's motion, without a hearing.

### Trial Testimony

At trial, Winzer testified that he was, at all relevant times, an employee of Pepsi and that he received all of his training from Pepsi. He testified further that, on the day of the incident, he was at the Giant supermarket to make sure Pepsi products were stocked. Winzer maintained that no one from Giant ever told him how to stock the Pepsi products. He added that the pallet jack he used to stock the shelves was owned by Giant and that

---

[1] Petitioner attempted later to join Pepsi as a defendant. Pepsi moved to dismiss based on limitations. The circuit court granted the motion.

2

Giant had given him permission to use the pallet jack for that purpose. Upon arriving that day at the store, he checked in with a Giant employee, as required.

Kevin Corradini, Giant's designated Corporate Representative, testified during a video deposition (played at trial) that vendors' employees, like Winzer, are permitted to use the non-motorized pallet jacks while in the store. Corradini stated that the store also has motorized pallet jacks, which may only be used by certified store employees. Vendors, like Winzer, are not instructed generally "where to move and how to move throughout the store[,]" but they are expected to do so safely while in the store. A vendor could be removed from a store if he is "not doing something properly."

### Motion for Judgment[2]

At the conclusion of Petitioner's case-in-chief, Giant moved for judgment on the grounds that there was no evidence to support a claim for vicarious liability, given that Winzer was not an agent, servant, or employee of Giant. The circuit court denied the motion and found that there was sufficient evidence to show that Giant had the necessary control over Winzer's actions while he was in the store.

---

[2] The Amicus brief in this case focuses on a premises liability theory of recovery. This argument is not before us, however. Although such a theory was advanced in the trial court, the trial judge rejected it at the close of the evidence. The appeal did not challenge that ruling. To be sure, such a theory does not appear to be frivolous on this record. The Restatement (Second) of Torts states, in relevant part at Section 415: "A possessor of land who holds it open to the public for any purpose is subject to liability to members of the public entering for that purpose for physical harm caused to them by his failure to exercise reasonable care to protect them against unreasonably dangerous activities of, or unreasonably dangerous conditions created by, an independent contractor or concessionaire employed or permitted to do work or carry on an activity on the land." Whether Giant was entitled to judgment as a matter of law on this record will not be considered here.

### *Spoliation*

During his video deposition, Corradini stated that the Giant store where the incident occurred had video cameras "throughout the entire store[,]" including in the area of the frozen food section where Petitioner was injured. Prior to trial, he requested that the company that maintained Giant's security cameras retain any video of the incident. Later, he learned that no such video existed.

Prior to jury instructions, Petitioner asked the circuit court to give a spoliation instruction in light of the fact that Giant did not produce a video of the incident. Giant objected, arguing that such an instruction would be prejudicial, given that there was no evidence that a video of the incident ever existed. The circuit court agreed with Petitioner and instructed the jury as follows:

> The destruction … of or the failure to preserve evidence by a party may give rise to an inference unfavorable to that party. If you find that the intent was to conceal the evidence, this destruction or failure to preserve must be inferred to indicate that the party believes that his or her case is weak and that he or she would not prevail if the evidence was preserved. If you find that the destruction or failure to preserve the evidence was negligent you may but are not required to infer that the evidence, if preserved, would have been unfavorable to that party.

During closing argument, Petitioner's counsel emphasized the circuit court's spoliation instruction:

> Another thing I really want you to pay close attention to is a spoliation instruction that the Judge gave you and I think this one is absolutely critical. You heard testimony from Giant's rep about a couple different things. You heard they have 30 plus some odd cameras in the store that point – some cameras that point directly to the frozen food section. You had the incident report. You know they were on notice that day. … We asked them to preserve the evidence. … And then we hear for the first time at trial … [that] it definitely doesn't exist.

4

Do we really believe that there's no video footage of this incident? There's almost always video footage. And what I would submit is if there was footage it would probably corroborate and be consistent with Ms. Webb's description but we don't have it and that benefits them. So when you're thinking about that, what makes sense and what doesn't, just bear that instruction in mind because I do think it's really important.

### *The Court of Special Appeals*

The jury returned a verdict in favor of Petitioner, and Giant noted an appeal to the Court of Special Appeals. Giant argued that the circuit court erred in denying its motion for summary judgment prior to trial and in denying its subsequent motion for judgment at the close of evidence. Giant also argued that the court erred in giving the spoliation instruction.[3]

The Court of Special Appeals reversed the circuit court's judgment and held that, although the circuit court did not err in denying Giant's motion for summary judgment, the court did err in denying Giant's motion for judgment. *Giant*, 249 Md. App. at 560-66. Regarding the motion for summary judgment, the Court noted that the denial of a motion for summary judgment is reviewed for abuse of discretion. *Id.* at 559. The Court noted further that a trial court may exercise its discretion to deny a motion for summary judgment even though there are no disputes of material fact and the moving party may be entitled to judgment as a matter of law. *Id.* at 560. The Court explained that it was "not persuaded" that the circuit court's denial of Giant's "technically sufficient motion for summary

---

[3] Giant raised a third challenge, but that argument is not before this Court.

judgment in favor of a full hearing on the merits" constituted an abuse of discretion. *Id.* (quotations omitted).

As to its consideration of Giant's argument regarding the motion for judgment, the Court set forth the following standard of review:

> When we review a trial court's ruling on a motion for judgment, we ask:
>
> whether on the evidence adduced, viewed in the light most favorable to the non-moving party, any reasonable trier of fact could find the elements of the tort by a preponderance of the evidence. … If there is even a slight amount of evidence that would support a finding by the trier of fact in favor of the plaintiff, the motion for judgment should be denied.

*Id.* at 560-61 (citation omitted) (alterations in original).

The Court evaluated Giant's contention that "there was insufficient evidence to support the existence of an employment relationship between Giant and [] Winzer and therefore no grounds for Giant to be vicariously liable for [] Winzer's actions." *Id.* at 561 (quotations omitted). The Court agreed, explaining that, because Winzer was an independent contractor (and not an employee) of Giant, Petitioner needed to show that Giant "had retained control over the operative detail and methods of [] Winzer's work, including the very thing from which the injury arose." *Id.* at 565-66 (quotations omitted) (emphasis removed). The Court concluded that Petitioner failed to carry that burden:

> To the extent that Ms. Webb's injury "arose" out of Mr. Winzer's use of an unpowered pallet jack in his work, Giant's control extended only to a prohibition against the use of powered jacks by any vendor.
>
> In sum, correcting a vendor *observed* using a pallet jack improperly, requiring a vendor to check in and out, to stock in a particular location of the store, permitting only non-powered jacks, and "sometimes" checking the vendor's work – do not indicate sufficient control over the "methods" and "operative detail" of Mr. Winzer's work to extend liability on Giant for his

6

actions. Rather than a right to supervise Mr. Winzer's work, these are general rights that a possessor of the premises on which the work is being done would ordinarily retain for itself. For this reason, we hold, as a matter of law, that the evidence was insufficient to submit the vicarious liability claim to the jury, and that Giant's motion for judgment should have been granted.

*Id.* at 566 (internal citation omitted) (emphasis in original).

In addition, the Court held that, had it not reversed the circuit court's judgment based on its evaluation of the denial of Giant's motion for judgment, it would have reversed the judgment based on the spoilation instruction. *Id.* at 573. The Court explained that the instruction was improper because there was "no direct evidence that a video of the incident actually existed or that it was destroyed or otherwise not preserved." *Id.* at 571. The Court stated that the instruction was also prejudicial because "the jury was invited and permitted … to engage in speculation regarding concealment, destruction, and failure to preserve evidence that was not shown to actually exist." *Id.* at 573.

Petitioner turned next to this Court. We granted *certiorari*, *Webb v. Giant of Maryland, LLC*, 474 Md. 633 (2021), to determine: whether the Court of Special Appeals applied the correct standard of review in evaluating the circuit court's denial of Giant's motion for judgment; whether the Court erred in reversing the circuit court's judgment on the grounds that the circuit court denied erroneously Giant's motion for judgment; and, whether the Court erred in holding that the circuit court committed reversible error in giving the spoilation instruction.

7

## DISCUSSION

## I.

### *The Parties' Contentions*

Petitioner contends first that the Court of Special Appeals did not apply the correct standard of review in evaluating the circuit court's denial of Giant's motion for judgment. She argues that the Court "should have, but did not, apply an abuse of discretion standard in determining whether the trial court's denial of the motion for judgment was proper." Petitioner notes that the Court applied correctly the abuse of discretion standard in affirming the circuit court's denial of Giant's pre-trial motion for summary judgment, and should have applied the same standard to determine that the circuit court did not err in denying Giant's motion for judgment. She asserts that it was "illogical" for the Court to hold that the facts were sufficient to affirm the denial of Giant's motion for summary judgment but were insufficient somehow to affirm the denial of Giant's motion for judgment.

Giant responds that the Court of Special Appeals applied the correct standard of review. It asserts that there was nothing "illogical" about the Court's decision to affirm the denial of the motion for summary judgment but reverse the circuit court's denial of the motion for judgment.

### *Analysis*

Maryland Rule 2-501 states that, in reviewing a pre-trial motion for summary judgment, the court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that

8

the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f). "With respect to the trial court's grant of a motion for summary judgment, the standard of review is *de novo*." *Dashiell v. Meeks*, 396 Md. 149, 163 (2006). "Only when there is an absence of a genuine dispute of material fact will the appellate court determine whether the trial court was correct as a matter of law." *Id.* A trial court does not have any discretionary power in granting a motion for summary judgment when there are no disputes of material fact. *Id.* at 164.

A trial court has, however, discretionary power "when affirmatively denying a motion for summary judgment or denying summary judgment in favor of a full hearing on the merits." *Id.* This discretionary power "exists even though the technical requirements for the entry of such a judgment have been met." *Metro. Mortg. Fund, Inc. v. Basiliko*, 288 Md. 25, 28 (1980). That is, "no party is entitled to a summary judgment as a matter of law. It is within the discretion of the judge hearing the motion, if he finds no uncontroverted material facts, to grant summary judgment or to require a trial on the merits." *Foy v. Prudential Ins. Co. of America*, 316 Md. 418, 424 (1989). "Thus, on appeal, the standard of review for a denial of a motion for summary judgment is whether the trial judge abused his discretion and in the absence of such a showing, the decision of the trial judge will not be disturbed." *Dashiell*, 396 Md. at 165.

As to a motion for judgment, Maryland Rule 2-519 states that "[a] party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence." Md. Rule 2-519(a). "[W]hen a defendant moves for judgment based on … the legal insufficiency of

the plaintiff's evidence, the trial judge must determine if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question[.]" *Thomas v. Panco Mgmt. of Maryland, LLC*, 423 Md. 387, 394 (2011) (citations and quotations omitted). "Where the defendant, in a jury trial for negligence, argues that plaintiffs' evidence is insufficient to create a triable issue, the court determines whether any inference of negligence is permissible; that is, whether the evidence demonstrates that it is more probable than not that the defendant was negligent." *District of Columbia v. Singleton*, 425 Md. 398, 407 (2012). "The court considers the evidence and reasonable inferences drawn from the evidence in the light most favorable to the non-moving party." *Sugarman v. Liles*, 460 Md. 396, 413 (2018). "It is only when the facts and circumstances only permit one inference with regard to the issue presented, that the issue is one of law for the court and not one of fact for the jury." *Thomas*, 423 Md. at 394 (citation and quotations omitted).

"We review the trial court's decision to grant or deny a motion for judgment in a civil case without deference." *Sugarman*, 460 Md. at 413. In so doing, "[w]e conduct the same analysis that [the] trial court should make when considering the motion for judgment." *Singleton*, 425 Md. at 406-07.

In light of those legal principles, we hold that the analysis carried-out by the Court of Special Appeals was appropriate. First, Petitioner is mistaken in claiming that the Court should have reviewed the circuit court's decisions regarding Giant's motion for judgment and its pre-trial motion for summary judgment under the same standard. As this Court's caselaw makes clear, the standard of review for a summary judgment motion depends on how the trial court rules. If the trial court grants the motion, that is, if the court determines

10

that there are no genuine disputes as to any material fact and the moving party is entitled to summary judgment as a matter of law, an appellate court reviews that decision *without deference*. If, on the other hand, the trial court denies the motion, an appellate court reviews that decision for abuse of discretion. When determining whether a trial court abused its discretion in denying a summary judgment motion, an appellate court should be mindful of the fact that the trial court has the discretionary power to deny the motion and require a trial on the merits "even though the technical requirements for the entry of such a judgment have been met." *Basiliko*, 288 Md. at 28.

The trial court's decision regarding a motion for judgment, by contrast, is reviewed without deference, regardless of the outcome. In effectuating that review, an appellate court conducts the same analysis as the trial court. Specifically, the appellate court looks at the evidence in a light most favorable to the non-moving party and evaluates whether the evidence was sufficient as a matter of law to generate a jury question as to the cause of action at issue. If the appellate court determines that the evidence permits only an inference in favor of the moving party regarding the issue presented, then that party is entitled to judgment as a matter of law.

We are persuaded that the Court of Special Appeals applied the correct standard of review in the present case. The Court reviewed the circuit court's denial of Giant's motion for summary judgment for abuse of discretion, holding that the court did not abuse its discretion in denying the motion even though the motion may have been "technically sufficient." Then, in reviewing the circuit court's denial of Giant's motion for judgment, the Court conducted the same analysis as the circuit court and reviewed the evidence in a

11

light most favorable to Petitioner (the non-moving party). Based on that review, which the appellate court conducted without deference to the circuit court, the Court held that the evidence was insufficient to submit the vicarious liability claim to the jury and that, as a result, Giant was entitled to judgment as a matter of law. The Court's analysis was sound and consistent with our established precedent.

As noted, Petitioner claims that it was "illogical" for the Court of Special Appeals to hold that the facts were sufficient to affirm the circuit court's denial of Giant's motion for summary judgment and, yet, were insufficient to affirm the circuit court's denial of the motion for judgment. We disagree. The Court of Special Appeals did not hold that the facts were sufficient to affirm the denial of the motion for summary judgment. Rather, the Court held that the circuit court did not abuse its discretion in denying the motion for summary judgment, in favor of a full hearing on the merits. At no point did the Court suggest that the underlying facts of the case had anything to do with its holding. Regardless, there is nothing "illogical" about affirming the denial of a motion for summary judgment and then reversing the denial of a subsequent motion for judgment, even in cases in which the underlying material facts remain largely unchanged from one to the other.

## II.

### *The Parties' Contentions*

Petitioner claims next that the Court of Special Appeals erred in reversing the circuit court's denial of Giant's motion for judgment. She asserts that her claim of negligence against Giant was submitted properly to the jury because the evidence permitted an inference that Giant had sufficient control over Winzer and thus was liable for his actions.

12

Giant counters that the Court of Special Appeals reached the proper legal conclusion in holding that Giant did not retain or exercise sufficient control over Winzer's actions.

*Analysis*

"Generally, an employer of an independent contractor is not liable for the negligence of the contractor or his employees." *Appiah v. Hall*, 416 Md. 533, 558 (2010) (citation and quotations omitted). However, today, countless exceptions have all but eroded the general rule. Restatement (Second) of Torts § 409, comment b. ("[The exceptions] are so numerous, and they have so far eroded the 'general rule,' that it can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it."). Before the Court of Special Appeals, Petitioner pointed to one such exception, which is "[w]hen an employer has retained control of the details of the work, however, liability is permitted under a theory of actual fault." *Appiah*, 416 Md. at 563; *see also* Restatement (Second) of Torts § 414.

Under this exception, "the retention of control is an absolute prerequisite to an employer's liability for harm caused by the work of an independent contractor." *Id.* "General control over an independent contractor's work, [moreover], is insufficient to establish liability." *Id.* To fall under the § 414 exception, "'[i]t is not enough that [an employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.'" *Id.* at 563-64 (quoting Restatement (Second) of Torts § 414 cmt. c). There must instead be "'such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.'"

13

*Id.* at 564 (quoting Restatement § 414 cmt. c). "We have characterized these principles as requiring plaintiffs to demonstrate that the employer not only has retained control over the operative detail and methods of the work but also that this control extends to *the very thing from which the injury arose*." *Id.* (citation and quotations omitted) (emphasis in original).

Here, it is undisputed that Winzer was a Pepsi employee (not an employee of Giant) when Petitioner's injury occurred. It is also undisputed that Petitioner's injury arose from Winzer's use of Giant's pallet jack, which, at the time of the injury, he was pushing along a Giant supermarket aisle in an effort to stock the supermarket's shelves with Pepsi products. Given that Petitioner relied on § 414 for a theory of liability, the question is whether Giant retained sufficient control as to Winzer's "methods of work" or "operative detail" while he was using the pallet jack to stock the shelves. Petitioner highlights the following as indicative of Giant's "control" over Winzer's work: (1) Giant required Winzer to use only non-powered jacks; (2) Giant required Winzer to "check in and out[;]" (3) Giant could correct Winzer if he was seen using a pallet jack improperly; (4) Giant could instruct Winzer on where to go in the store; and, (5) Winzer could be removed from the premises for failing to operate safely Giant's equipment.[4]

We hold that the evidence was insufficient to submit Petitioner's negligence claim to the jury. The evidence, even when viewed in a light most favorable to Petitioner, did not permit an inference that Giant retained sufficient control over Winzer's work. At best,

---

[4] Petitioner claims that Winzer testified that "he operated the pallet jack under Giant's instruction, direction and supervision." That claim is not supported by the record. Winzer testified merely that a Giant store receiver or manager "could" give him directions, instructions and supervision "in terms of where to go."

14

the evidence established that Giant had only a general right to order the work stopped, to inspect its progress, to make suggestions or recommendations, and to prescribe alterations and deviations. As the Court of Special Appeals noted, such rights "are general rights that a possessor of the premises on which the work is being done would ordinarily retain for itself" and "do not indicate sufficient control over the 'methods' and 'operative detail' of [] Winzer's work to extend liability on Giant for his actions." *Webb*, 249 Md. App. at 566. Moreover, none of the general rights noted by Petitioner, aside from Giant's prohibition on the use of powered pallet jacks by non-Giant certified persons, extended to the "very thing from which the injury arose," *i.e.*, Winzer's use of Giant's non-motorized pallet jack to stock the store's shelves. Rather, those rights exhibit only a general control over Winzer's work, which is insufficient to establish liability. *See Appiah*, 416 Md. at 563-64.

To be sure, the evidence did establish that Giant retained some control over Mr. Winzer's actions while he was in the store. Petitioner, citing *Appiah, supra*, argues that that control was sufficient because Winzer was "not *entirely* free to do the work in his own way." *Appiah*, 416 Md. at 564 (citation and quotations omitted) (emphasis added).

We remain unpersuaded. We do not read the Restatement (Second) of Torts language relied on by Petitioner, which we quoted earlier, as requiring an employer to have absolutely no control over a contractor's work in order to be shielded from liability. Such a result would be nonsensical and would be at odds with the requirement that an employer have more than just general control over the contractor's work. Petitioner's reading would be at odds also with our holding in *Appiah*, in which we declared that the employer's control must be "over the operative detail and methods of the work" and must extend "to

15

the very thing from which the injury arose." *Id.* at 564 (citation, quotations and emphasis omitted). The evidence was insufficient to impart liability upon Giant for Winzer's actions.

## III.

### *The Parties' Contentions*

Petitioner's final claim is that the Court of Special Appeals erred in holding that the circuit court's spoliation instruction was prejudicial. Petitioner argues that, before finding that the instruction was prejudicial, the Court was required to find that the circuit court abused its discretion in giving the instruction. Petitioner argues that the Court failed to make such a finding. Petitioner argues further that there was nothing unduly prejudicial about the instruction.

Giant contends that the Court of Special Appeals correctly held that the circuit court's spoliation instruction was improper and prejudicial. Giant argues that the instruction was improper because Petitioner failed to establish that the evidence supposedly destroyed – a video recording of the incident – ever actually existed. Giant argues that giving the instruction under those circumstances was likewise prejudicial because it invited the jury "to speculate not only as to whether evidence actually existed, but also as to what such video might have depicted assuming it existed."[5]

---

[5] Ordinarily, we would not need to reach and decide Petitioner's spoliation question, in view of our disposition of her first two questions. We exercise our discretion to consider it, however, in order to clarify language in the opinion of the Court of Special Appeals regarding what types of evidence may satisfy a plaintiff's burden in laying a foundation for such a spoliation instruction.

16

*Analysis*

"This Court reviews a trial court's grant or denial of a requested jury instruction for abuse of discretion." *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 469 Md. 704, 739 (2020). "When applying the abuse of discretion standard in this context, we look to the following factors: (1) whether the requested instruction was a correct statement of the law; (2) whether it was applicable under the facts of the case; and (3) whether it was fairly covered in the instructions actually given." *Id.* (citation and quotations omitted). "Whether the evidence is sufficient to generate the requested instruction in the first instance is a question of law for the judge." *Fleming v. State*, 373 Md. 426, 433 (2003). "Error will be found if the given instruction is not supported by evidence in the case." *CSX Transp., Inc. v. Pitts*, 430 Md. 431, 458 (2013).

In addition, "[t]he proven error must … be prejudicial, not harmless." *Id.* "An erroneous instruction may be prejudicial if it is misleading or distracting for the jury, and permits the jury members to speculate about inapplicable legal principles." *Barksdale v. Wilkowsky*, 419 Md. 649, 669 (2011). "Moreover, in certain cases, the mere inability of a reviewing court to rule out prejudice, given the facts of the case, may be enough to declare an error reversible." *Id.* at 670. Nevertheless, to establish reversible error, "the complainant must show that prejudice was 'likely' or 'substantial.'" *Id.* at 662. "[T]he general rule is that a complainant who has proved error must show more than that prejudice was *possible*; she must show instead that it was *probable*." *Id.* (emphasis in original).

"Maryland recognizes some form of jury instructions regarding missing or destroyed evidence in both civil and the criminal contexts." *Cost v. State*, 417 Md. 360,

17

370 (2010).  "In the civil context, we give a jury instruction for the 'spoliation of evidence' where a party has destroyed or failed to produce evidence."  *Id.*  That instruction reads:

> The destruction of or the failure to preserve evidence by a party may give rise to an inference unfavorable to that party.  If you find that the intent was to conceal the evidence, the destruction or failure to preserve must be inferred to indicate that the party believes that his or her case is weak and that he or she would not prevail if the evidence was preserved.  If you find that the destruction or failure to preserve the evidence was negligent, you may, but are not required to, infer that the evidence, if preserved, would have been unfavorable to that party.

Maryland Civil Pattern Jury Instructions 1:16 ("MPJI-CV").  "Such an instruction is designed to draw a jury's attention to a simple, straightforward premise: that one does not ordinarily withhold evidence that is beneficial to one's case."  *Cost*, 417 Md. at 370 (citation and quotations omitted).

A similar inference, known as the "missing witness inference," is embodied in Maryland Criminal Pattern Jury Instructions 3:29 ("MPJI-CR") and provides that, where a party in a criminal case fails to call a particular witness that is within that party's power to produce, then the jury may decide that the witness's testimony would have been unfavorable to that party.  *See Harris v. State*, 458 Md. 370, 388-411 (2018).  That inference arises generally in one of two contexts: either a party requests that the trial court instruct the jury on the inference, or a party raises the inference during closing arguments. *Davis v. State*, 333 Md. 27, 52 (1993) (*overruled on other grounds by Pearson v. State*, 437 Md. 350 (2014)).  As we have explained, trial courts should be cautious when the inference is raised in the context of a jury instruction, as opposed to during closing argument:

18

Where a party raises the missing witness rule during closing argument, its use is just that – an argument. Trial judges typically instruct the jury … that the parties' arguments do not constitute evidence. Furthermore, the opposing side also has an opportunity to refute the argument and counter with reasons why the inference is inappropriate.

In contrast to the argument context is the trial judge's instruction to the jury. In the latter case, the inference is communicated to the jury as part of the judge's binding jury instructions, creating the danger that the jury may give the inference undue weight. At the very least, a trial judge's jury instruction on the missing witness inference may have the effect of overemphasizing just one of the many proper inferences that a jury may draw. As a result, where the jury instruction is the vehicle by which the missing witness inference is brought to the jury's attention, the trial court should be especially cautious[.] … A trial judge has discretion to deny a missing witness instruction, leaving the matter to closing arguments, even when the facts would support the inference.

*Id.*; *see also Harris*, 458 Md. at 404-05 ("A trial court should be 'especially cautious' in considering whether to give a missing witness instruction adverse to a defendant in a criminal case."). Importantly, "[a] trial court has no discretion to give a missing witness instruction where the facts do not support the inference." *Harris*, 458 Md. at 406.

Against that backdrop, we conclude that the Court of Special Appeals's holding as to the impropriety of the circuit court's spoliation instruction was not erroneous. Despite Petitioner's claims to the contrary, the appellate court was not required to make any express finding that the circuit court abused its discretion. Rather, it was required to review the circuit court's decision for abuse of discretion and determine, among other things, whether the instruction was applicable under the evidence of the case. The Court did just that, explaining in some detail how the facts of the case did not support a spoliation instruction. *Webb*, 249 Md. App. at 571-72. The intermediate appellate court noted that there was "no direct evidence that a video of the incident actually existed or that it was destroyed or

otherwise not preserved." *Id.* at 571.[6] The Court noted further that, although there was evidence of the existence of a number of video cameras in the vicinity of where the injury occurred, that evidence only supported "the video's *possible* existence, but not its actual existence." *Id.* at 572 (emphasis in original). The Court reasoned that "[t]here can be no act of destruction or failure to preserve evidence not proven to exist, and therefore no act or omission from which inferences can arise." *Id.* at 571. Noting the influence that a trial court's instructions have on the jury, the Court reasoned further that "[t]he failure of the multiple cameras to capture the incident could be grist for credibility and argument mills, but it would not justify a spoliation instruction." *Id.* at 572.

The Court of Special Appeals's analysis was sound and its holding proper. We agree that, for a spoliation instruction to be supported by the evidence, there must be some indication that the destroyed evidence existed at some prior point in time. The inference to be drawn from a spoliation instruction is clear: that a party destroyed or failed, either negligently or deliberately, to produce evidence that was unfavorable to that party. Such an inference requires necessarily that the party had the evidence in his or her possession, or, at the very least, that the party knew about the evidence's contents or existence at some point prior to the destruction (or lack of production) of the potential evidence. Here, there was no testimony or other evidence to show that the video ever existed.[7] To the contrary,

---

[6] Circumstantial evidence, in addition to direct evidence, may satisfy the burden. *See, e.g., Steamfitters*, 469 Md. at 738-45.

[7] For this reason, Petitioner's reliance on *Steamfitters, supra*, is misplaced. There, it was undisputed that the video in question had existed and was destroyed by one of the parties. *Steamfitters*, 469 Md. at 738.

the only evidence on that issue was the testimony of Giant's corporate representative, Kevin Corradini, who stated conclusively that the video never existed. It was, therefore, improper for the circuit court to instruct the jury that it could draw an inference as to Giant's destruction of the video, where there was no evidence that such a video existed previously. Giving such an instruction under the circumstances was legally erroneous and an abuse of discretion.

Petitioner argues that the instruction was warranted because the jury could infer the existence of the video based on the fact that Giant had security cameras mounted in the area where the injury occurred. We remain unpersuaded. Were we to accept Petitioner's argument, the jury would be required to draw a preliminary inference as to the existence of the evidence before it could draw an inference as to a party's destruction or failure to produce that evidence. Requiring the jury to make that preliminary inference is not supported by the language of the jury instruction or by the principles embodied in the "missing evidence" rule. Again, the purpose of the instruction is to permit the jury to draw inferences about missing evidence, not to require the jury to speculate as to whether the evidence existed in the first place.

Petitioner argues also that the Court of Special Appeals contradicted itself in holding that the spoliation instruction was improper, although, at the same time, recognizing that "[t]he failure of the multiple cameras to capture the incident could be grist for credibility and argument mills[.]" *Webb*, 249 Md. App. at 572. We reject that argument. As noted, there is an important distinction between a trial court instructing the jury on spoliation and a trial court allowing a party to argue spoliation during closing argument. In a jury

21

instruction, the inference is communicated to the jury by the trial judge, which may result in the jury giving the inference undue weight. Such a result is much less likely in the context of an argument by counsel, as opposing counsel is provided the opportunity to respond and the jury is instructed that counsels' arguments do not constitute evidence. Thus, it may be perfectly reasonable for a court to refuse a spoliation instruction, but allow the parties to argue the point during closing argument.

Finally, we agree with the Court of Special Appeals's conclusion that the spoliation instruction was prejudicial. The instruction was misleading and required the jury to speculate about the existence of potentially damning evidence. The instruction also invited the jury to speculate about the applicability of a legal principle – the inference to be drawn from the destruction or concealment of evidence – regarding evidence that was never shown to exist in the first place. And, although the instruction did not mention specifically the video or Giant, Petitioner's counsel shone a spotlight on that point during closing. Counsel told the jury to "pay close attention to" the spoliation instruction, suggesting that Giant was lying about the existence of the video because "[t]here's almost always video footage." Plaintiff's counsel argued that such a video "would probably corroborate and be consistent with Ms. Webb's description" of the incident. Plaintiff's counsel concluded by arguing that "we don't have it and that benefits them."

Given those circumstances, we are persuaded that the prejudice resulting from the erroneous spoliation instruction was probable. Accordingly, the Court of Special Appeals did not err in holding that reversal was warranted based on that instruction.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**